## Ellis *versus* Lane.

85      265
e 26 SC ¹509

85      265
211      24

1. Where a jury is dispensed with and the cause submitted to the court under the provisions of the Act of April 22d 1874, the facts found by the court, so far as they are material to a just decision of the cause, should be separately and distinctly stated, with at least as much precision and particularity as are required in a special verdict ; and after answering the points, if any are submitted, the conclusions of law, applicable to the facts, should be clearly stated.

2. Defendants contracted to rebuild a mill, " to be furnished with machinery in all respects similar to that in the mill burned." Plaintiff contended this was intended to mean all the machinery in the mill, whether in use or not. The court found that nearly all the machinery for which plaintiff claimed damages had gone out of use or been laid aside, and that the only machinery in contemplation of the parties was that in actual use when the fire occurred, and that having been placed therein the contract was substantially performed. *Held*, not to be error.

October 15th 1877.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas of *Jefferson county:* Of October and November Term 1877, No. 61.

Covenant by J. L. Ellis against W. T. and N. B. Lane. Defendants pleaded *non est factum,* covenants performed, *absque hoc,* with leave, &c.

In September 1867, J. E. Gay made a lease to N. B. Lane, of a certain tract of timber land, containing about four thousand acres, in Elk and Jefferson counties, upon which property was a saw-mill. In April 1873, J. L. Ellis bought the property from Gay, with all Gay's right to the lease with Lane, and on the 25th of July following, the mill was burned.   On the 13th of August 1873, a contract was made between Ellis and Lane and his brother to rebuild the mill so burned, on or before the 1st of December 1873 ; said mill to be of the same length, breadth and general dimensions, and to be furnished with machinery in all respects similar to that in the mill so burned, so that the said mill to be so erected shall be in all respects as good as the said mill was at the time it was destroyed, all work done upon the mill to be done in a good, substantial and workmanlike manner, and all machinery to be fit and suitable for its intended purposes and capable of doing as much work as that in the mill destroyed.

In consideration whereof Ellis agreed to pay over to the Lanes, all and every sum of money which he may receive, or has received, on account of any insurance against loss by fire on the said mill so burned as aforesaid, to be paid as the work progresses ; it being understood that the amount of insurance on said mill was $5000. And in case the said amount should not be paid by the companies promptly, the said Ellis shall not be compelled to pay the same until received by him ; but in case said insurance, or any part thereof, should not, for any reason, be recovered from the underwriters, then

[Ellis *v.* Lane.]

and in that case, the said Lanes shall be at liberty to reimburse themselves to the extent of $5000 out of the logs now at the mill, if there is enough for that purpose, and should the interest of said party of the first part in said logs and the lumber manufactured therefrom be insufficient to pay such sum, the balance after the said logs are manufactured and sold, shall be paid by said first party to said second party in cash.

The lumber in Lane's hands mentioned in the contract for rebuilding, it appeared, had been run to market and sold by Lane, amounting to about one million feet, and Lane had agreed by contract under seal, dated 22d June 1874, that he would pay one-third of the proceeds over to A. W. Miner, to hold until the rights of the parties should be ascertained.

The plaintiff alleged that at the time the old mill was burned it had three Upham wheels, one six feet, one four feet, and one three feet, and a centre-vent wheel; that the six-feet Upham wheel drove a gang of twenty-four to thirty saws; the centre-vent wheel a circular saw and a bull-wheel; the four-feet Upham wheel a single sash saw and bull-wheel; and the three-feet Upham wheel an edger and a shingle machine; and that all the necessary shafting, belting and machinery for a convenient and complete mill, of the character indicated by the power and saws, were in and on the mill. It appeared, however, that the Lanes only used the circular saw, and the other machinery was laid aside in the mill.

The plaintiff further alleged that the Lanes, when they rebuilt the mill, instead of four water-wheels, had only put in two; that they had put in only one bull-wheel, no shingle machine, no gang of saws and no upright saw, nor flumes or other arrangements in or about the building to put in such machinery. In addition to these, it was claimed by the plaintiff that the defendants had not put in a sufficient frame, nor roof, nor proper timbers in the frame; that one of the wheels was not sufficient to drive the circular saw, and had to be taken out and supplied by another immediately, in order to do any sawing at all; that the gates would not open, and there were general defects in the whole structure.

For these alleged defects this suit was brought, the plaintiff contending that under the contract, all the machinery, except that for the gang saws in the old mill at the time it was burned, whether it was in use or not, was to be put into the new one; that this was not done, and that the plaintiff was therefore entitled to what it would cost to put it in, a sum nearly, if not fully, equal to what was to have been paid for the whole work. The defendants contended that by the contract they were obliged to do no more than put in such machinery as was necessary to make as good a circular saw-mill as the old one was when it was burned down. By agreement of the parties, a jury was dispensed with and the cause

submitted to the court, under the provisions of the Act of April 22d 1874.

The court, Jenks, P. J., filed the following opinion, which is given in full, in view of the exceptions taken thereto, and the comments of this court thereon, with reference to the duty of the court when a case is submitted in the manner prescribed by the Act of 1874.

The court said:—

"The words 'to be furnished with machinery in all respects similar to that in the mill so burned,' are qualified by the words 'so that the said mill to be so erected shall be in all respects as good as the said mill so burned was at the time it was destroyed.'

"The first clause describes the machinery, the last the result to be obtained by that machinery, to wit: quality of machinery and manufacturing capacity equal to the old mill at the time it was burned—this to be obtained by the use of the same kind of machinery. Nearly, if not all of the machinery for want of which the plaintiff claims damages, had gone out of use or been laid aside. Its presence in or about the mill at the time it was burned, as a then available element in manufacturing lumber, did not enter into the minds of any one. At the time it was burned, and for some time previous, the machinery necessary to operate successfully a circular saw-mill was used. This the parties had in their minds when they made the contract. The mill as it actually was, not what it had been. This view is supported by several considerations not referred to in the contract. The defendants were millwrights; they could not but know that to build and furnish the mill described, with all the machinery now claimed, would have cost about double the amount of the stipulated price. It is not to be supposed that they understood the contract to be as now alleged by the plaintiff, nor is it probable that the plaintiff himself, when he made the contract, understood it as now asserted. Upon this point the evidence of Mr. Derby is of great weight. He testified as follows: 'I have seen the mill built by defendants for plaintiff in place of the one that was burned. I saw it in the summer of 1874. I went there for the purpose of seeing the mill. I went at the request of Mr. Ellis, the plaintiff in this suit. Mr. Ellis said he was not a judge of the work, and that he wished to have it inspected by competent judges. Therefore he called upon Mr. Olmstead and myself. I examined it for the purpose of giving an opinion as to whether it was a good mill or not, whether properly built. I saw a writing which was said to be the contract for building the mill, and I told Mr. Ellis I thought the work was fairly done.'

"Is it not strange, with the mill and contract before him, and the witness, at his request, examining to see if it came up to what

[Ellis *v.* Lane.]

was required, when told that the work was fairly done, the plaintiff gave no intimation that the machinery stipulated for was not put in?

" The whole question, therefore, seems to be, not whether the thing to be done was done, but was it well done. So much of the claim of plaintiff as is founded upon the construction he now gives to the contract, we do not think well founded. The contract was substantially performed; the greatest part of the work fairly done. The weight of the testimony fully sustains that of Mr. Derby, referred to above.

" There has been considerable controversy about the frame, roof, gate casing, &c. Balancing all of the testimony under the contract, we think five hundred dollars would fairly compensate for all of the defects. This deducted from the price agreed to be paid would leave a balance in favor of the defendants of four thousand five hundred dollars; for which amount judgment is directed to be entered in favor of the defendants."

The plaintiff excepted to the findings and conclusions of the court, alleging, *inter alia*, that they erred,

1. In not stating separately and distinctly the facts found.

2. In construing the words " to be furnished with machinery in all respects similar to that in the mill burned," to mean only such machinery as the defendants were using at and immediately before the fire, thereby excluding more than one-half of all machinery in the mill, and limiting the use of the mill only to circular saw without upright saw, shingle machine, one bull-wheel and three water-wheels, with necessary flumes and attachments.

3. In finding for the defendants four thousand five hundred dollars, when, by the terms of the contract declared on, they were to receive their pay only when collected of the insurance companies, when the evidence established that no money had been collected of the insurance companies; but that suits were pending for all such money, which were being prosecuted with diligence.

4. In finding for the defendants four thousand five hundred dollars, when, by the contract, no money was due, either at time suit was brought or at the time of trial.

The defendant also excepted.

The court overruled these exceptions, saying: " In our opinion we indicated with sufficient certainty all that was necessary. We have heard and considered the exceptions on fact of both plaintiff and defendant, and think substantial justice was done to both parties."

The plaintiff then took this writ, the errors assigned being those noted in the foregoing exceptions.

*Jenks & Clark*, for plaintiff in error.—When a case is submitted under the provisions of the Act of 1874, the court should first

separately and distinctly find the facts with sufficient fulness and precision to warrant the entry of a judgment thereon, and then, as in case of a special verdict, find the law applicable to the facts, apply it and enter therefrom the appropriate judgment, which it is claimed was not done in this case.

The third and fourth assignments of error raise the question as to the defendants' right to recover in this case against the plaintiff the consideration for building the mill. The only fact found by the court on the subject that was relevant to it is, that the defendants had substantially performed their contract. But even if they had, it does not follow they have right to judgment against Ellis for it. The contract is that Ellis "shall pay over all and every sum or sums of money which he may receive or has received on account of any insurance against loss by fire," "and in case said amount should not be paid by the companies promptly, said Ellis shall not be compelled to pay the same until received by him."

Now, before the Lanes had a right of action on this clause, it was necessary that they should show he had received some of the money, or had failed to receive it through some default of his. This was not alleged. On the contrary, it was proven Ellis had not received anything, but had brought suit for the amount due and the suit was still pending. Why, then, should judgment be rendered against him, when the express terms of the contract forbid it ?

*Gordon & Corbett*, for defendant in error.

Mr. Justice STERRETT delivered the opinion of the court, November 9th 1877.

This was an action of covenant on an article of agreement executed by the parties on the 13th of August 1873, whereby the defendants undertook, for the consideration therein named, to "construct and erect a saw-mill on the site of the mill burned; said mill to be of the same length, breadth and general dimensions, and to be furnished with machinery in all respects similar to that in the mill so burned, so that the said mill, to be so erected, shall be in all respects as good as the said mill was at the time it was destroyed; * * * and all machinery to be fit and suitable for its intended purposes and capable of doing as much work as that in the mill destroyed," &c.

We have not been furnished with the declaration, and are therefore not fully informed as to what breaches were assigned. The pleas were *non est factum*, covenants performed, *absque hoc*, with leave, &c.

By writing filed the parties agreed to dispense with trial by jury and submit the decision of the case to the court. The Act of April 22d 1874, under which the submission was made, provides that the decision of the court shall be in writing, stating separately

[Ellis *v.* Lane.]

and distinctly the facts found; the answers to any points submitted in writing by counsel, and the conclusions of law. It is of the utmost importance that these plain and explicit requirements of the law should be strictly complied with. In the first place the facts found by the court, so far as they are material to a just decision of the cause, should be separately and distinctly stated. with at least as much precision and particularity as are required in a special verdict; and, after answering the points, if any are submitted, the conclusions of law, applicable to the facts, should be clearly stated.

It is claimed, in the first assignment, that "the court erred in not stating separately and distinctly the facts found." If this were so it would of course be good ground for reversal; but it is not sufficiently clear that the provisions of the act, in this respect, have not been substantially complied with. In overruling the exceptions filed in the court below, the learned judge says that he indicated in his opinion, with sufficient certainty, all that was necessary. While the decision of the court does not strictly conform to the requirements of the act, we are unable to say from the record before us, that any material fact was omitted or improperly stated.

Considering the provisions of the contract, in relation to the kind and description of the mill that was to be erected, and viewing them in the light of the evidence before the court below, we are unable to say that any error was committed in construing the clause quoted in the 2d assignment of error. This clause is qualified to some extent by the words which immediately follow in the same sentence, viz. "so that the said mill, to be so erected, shall be in all respects as good as the mill so burned;" and, as part of the facts in the case, the learned judge found that nearly if not all the machinery, for want of which the plaintiff claimed damages, had gone out of use or been laid aside; that its presence, in or about the mill, at the time it was burned, as a then available element in manufacturing lumber, did not enter into the minds of the contracting parties, and that the contract was made with reference to the mill as it actually was at the time of the fire, not what it had previously been. He further found that the contract had been substantially performed by the defendants, and that the greater part of the work was fairly done; but, for defects in the frame work, roof, &c., he deducted five hundred dollars from the price agreed upon by the parties. This finding, with the exception of the fact of substantial performance, is not assigned for error, and if it were, we would not be justified in reversing unless it was shown to be manifestly wrong.

As to the third and fourth assignments; it is true the contract provides for the manner in which the defendants were to be paid, and the source whence the funds were to come; but this provision

[Ellis *v.* Lanc.]

of the contract was so modified by the agreement of June 22d 1874, as not to preclude them from setting up and maintaining, in this action, their claim for building the mill. By this latter agreement $5000 remained in the hands of A. W. Minor to await the result of this suit; and it was agreed, in case it was determined that the defendants were entitled to the whole or any part of the money, that they were to be paid, and the residue, if any, was to be handed over to Ellis, the plaintiff.

The plaintiff's points, referred to in the 5th, 6th and 7th assignments, were irrelevant, and there was therefore no error in declining to answer them. The 8th assignment is not sustained. We are unable to see that there was any error in finding that the defendants had substantially performed their part of the contract.

On the whole, we are satisfied that substantial justice was done between the parties, and the judgment should therefore be affirmed.

Judgment affirmed.