JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY *vs.* WORCESTER, NASHUA, AND ROCHESTER RAILROAD COMPANY.

Suffolk.     March 15, 1889. — May 10, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Railroad Consolidation — Liability of New Corporation — Statute.*

A railroad under lease issued bonds, guaranteed by the lessor, which provided that the holders might convert them into shares of stock of the lessee at par at any time after the completion of its road, — all by the express authority of special statute. After the road was completed, the lessor and lessee united, under a statute which provided that "the corporation so established shall . . . be subject to all the duties, restrictions, obligations, debts, and liabilities to which, at the time of the union, either of said corporations is subject," and that "all claims and contracts . . . against either corporation may be enforced by suit or action, to be commenced and prosecuted . . . against the corporation to be established under this act." After the consolidation, a holder of such bonds, to whom interest accruing thereon was paid by the new corporation, made a demand upon it for shares of stock as provided therein, but agreed to accept in satisfaction of his demand shares of stock in the new corporation, and the demand was refused. *Held,* that such bondholder might recover from the new corporation the damages occasioned to him by such refusal, and that his acceptance of interest was immaterial.

CONTRACT to recover damages for the non-issue of shares of stock in exchange for bonds. Writ dated April 14, 1887. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, on an agreed statement of facts, which so far as material is as follows.

The Nashua and Rochester Railroad Company, a New Hampshire corporation, in 1872, prior to its construction, was leased for fifty years to the Worcester and Nashua Railroad Company,

a corporation duly organized under the laws of that State and of this Commonwealth. The Nashua and Rochester Railroad Company subsequently issued bonds, dated April 1, 1874, to the amount of seven hundred thousand dollars, as authorized by a statute of New Hampshire (St. N. H. 1873, c. 139), which was approved on July 3, 1873, and provided, in § 2, that "bonds issued under authority of this act may be converted into shares of the capital stock of the corporation at the par value of one hundred dollars each, at the option of the holder, at any time after the completion of the road"; and in § 3, "The Worcester and Nashua Railroad Company shall indorse the said bonds, or otherwise guarantee the payment thereof, and the interest thereon." The plaintiff became the owner and holder of twenty-five of these bonds, each of which was of the denomination of one thousand dollars, and subsequently the Worcester and Nashua Railroad Company not only guaranteed the bonds so issued, but agreed to pay directly to the holders of them the six per cent interest due thereon.

By another statute of New Hampshire (St. N. H. 1879, c. 125), which was approved on July 1, 1879, the holders of the bonds were authorized "to surrender any or all of said bonds, and receive in lieu thereof new bonds of the same date and to the same amount; and said mortgage shall be security for said new bonds in the same way and manner, and to the same extent, as it was for the bonds surrendered."

The plaintiff, on September 30, 1879, under the provisions of this statute, surrendered its twenty-five six per cent bonds, and received in exchange therefor the bonds in question, which carried interest at five per cent, and were substantially the same in all particulars as the six per cent bonds, except that they recite the facts that they were issued in exchange for them, and that they have the additional security of a mortgage on the Worcester and Nashua Railroad. Both the original bonds and the substituted bonds contained the following language: "The holder of this bond may convert the same into shares of the capital stock of the corporation at the par value of one hundred dollars each, at the option of the holders, at any time after the completion of the road, upon the surrender of said bond at the office of the treasurer of the corporation."

A further statute of New Hampshire (St. N. H. 1875, c. 128), which was approved on July 3, 1875, authorized the Worcester and Nashua Railroad Company to purchase and hold, or have held for its benefit, bonds or shares of the capital stock of the Nashua and Rochester Railroad Company, and also provided, in § 1, that "any shares of the capital stock of the Nashua and Rochester Railroad shall be exchanged at par for said bonds by the Worcester and Nashua Railroad Company upon presentation."

In 1883, before which time the road of the Nashua and Rochester Railroad was completed, the Worcester and Nashua Railroad Company and the Nashua and Rochester Railroad Company were authorized to unite by another statute of New Hampshire (St. N. H. 1883, c. 239), which contained the following provisions:

" Section 1.    The Worcester and Nashua Railroad Company, and the Nashua and Rochester Railroad, corporations incorporated by the Legislatures of the States of New Hampshire and Massachusetts, are hereby authorized, at any time within six years from the passage of this act, to unite said corporations upon conditions that the holders of shares of the capital stock in either of said corporations may, upon surrender of such shares, receive in lieu thereof certificates for an equal number of shares in the corporation to be established under this act, and upon such other equal terms for each such share as may be mutually agreed upon, subject to the provisions of this act, by the written assent, or by vote of a majority in interest of the stockholders of each of said corporations, at meetings duly called for that purpose ; and such written assent or votes so passed by said corporations respectively shall be effectual to unite said corporations, within the intent and meaning of this act; and the corporation so established shall have all the powers and privileges, and be subject to all the duties and liabilities, set forth in the Public Statutes, and in all general laws that now are or may hereafter be in force relating to railroad corporations.

" Section 2.    If such union takes place as is provided for in this act, the corporation so established shall have, hold, and possess all the powers, privileges, rights, franchises, property, claims, and demands which, at the time of such union, may be held and enjoyed by the said existing corporations, and be

subject to all the duties, restrictions, obligations, debts, and liabilities to which, at the time of the union, either of said corporations is subject; and all suits at law or in equity, and all proceedings before any tribunal which may be pending, to which either corporation is a party, may be prosecuted and defended by the corporation hereby authorized to be established, in the same manner, and with the same effect, as might have been done had such union not been formed. All claims and contracts, and rights and causes of action at law or in equity, of or against either corporation, may be enforced by suit or action, to be commenced and prosecuted by or against the corporation to be established under this act as aforesaid. . . .

"Section 4. After the organization of the corporation established under this act, each of the said existing corporations shall continue for the purpose of perfecting the said union, and doing all such acts and things, if any, as may be necessary therefor, and shall execute all such transfers, assignments, and conveyances as the corporation established under this act may deem necessary or expedient to cause to vest in itself any property, estates, contracts, rights, or claims, if any there be, which do not vest in it by authority of this act."

The St. of 1883, c. 129, of this Commonwealth, was of like tenor with the statute of New Hampshire of 1883.

The stockholders of both corporations duly accepted these statutes, and in accordance with the provisions thereof united and formed one corporation, under an agreement in writing, which contained the following:

"On and after the first day of December, 1883, said corporations shall be united and consolidated, and shall thereafter form one corporation, to be known as and called the Worcester, Nashua, and Rochester Railroad Company; and that on and after said first day of December, A. D. 1883, each holder of stock in either of said corporations shall be and become a stockholder of the same number of shares in the consolidated company, and may at any time surrender his certificate of stock, and the same shall be cancelled and he shall receive in lieu thereof a certificate of the same number of shares in said consolidated company, which shares shall be in every respect of equal value, and entitled to the same dividends; and we do

further agree, for the purpose of equalizing said-shares, that a dividend, computed at the rate of three per cent per annum, shall be paid to the holders of stock in either of said corporations from the dates of the last dividends declared to the time said union takes place. Now, therefore, we, the undersigned stockholders in the Worcester and Nashua Railroad Company and the Nashua and Rochester Railroad, or in either of said corporations, being the owners of the number of shares of the capital stock in said corporations set against our names respectively, do hereby make and execute our written assent to the union and consolidation of the said Worcester and Nashua Railroad Company and the Nashua and Rochester Railroad, upon the terms and conditions above named, so as to form one corporation, to be called the Worcester, Nashua, and Rochester Railroad Company, and we do hereby assent to and adopt the provisions of the aforementioned act authorizing such union."

At the time the two corporations were consolidated the Worcester and Nashua Railroad Company held more than enough of the shares of stock of the Nashua and Rochester Railroad Company to satisfy the plaintiff's demand, and after the consolidation the interest upon the plaintiff's bonds was paid by the new corporation until October 1, 1886, including the coupons then payable. On March 3, 1887, the plaintiff surrendered its bonds, and tendered them to the defendant's treasurer, and demanded in exchange therefor two hundred and fifty shares of the stock of the Nashua and Rochester Railroad Company at par, by a demand in writing, which recited that "as said corporation has been consolidated with the Worcester and Nashua Railroad Company by authority of the Legislature, under the name of the Worcester, Nashua, and Rochester Railroad Company, two hundred and fifty shares of the capital stock of the latter corporation will be accepted in full satisfaction of this demand." This demand was refused by the defendant.

If upon these facts the plaintiff was entitled to recover, judgment was to be entered for it for the difference between the market value of its bonds on March 3, 1887, and that of two hundred and fifty shares of stock of the defendant corporation, or $8,250, with interest; otherwise, judgment was to be entered for the defendant.

*G. O. Shattuck & F. L. Hayes,* for the plaintiff.

*R. Olney,* for the defendant.

HOLMES, J.   The plaintiff is the holder of bonds which were issued by the Nashua and Rochester Railroad, and guaranteed by the Worcester and Nashua Railroad, and which gave the holder the right to convert them into stock of the former corporation, at par, at any time after the completion of its road, — all by express authority of special statute.   The road has been completed, and since then the two railroad corporations have been consolidated under a statute authorizing it.   The statute subjects the new corporation to all the contracts of the old, in terms to be stated.   The plaintiff has made a demand upon the new corporation, which has been refused, and the question is, whether it can recover damages for the refusal, or whether its right to convert the bonds into stock was ended, or at least limited in point of time by the consolidation.

It is argued that the contract to exchange stock for bonds depended on the continued existence of the contracting corporation, the stock of which was to be delivered, and that the bonds cannot be taken to have bound the Nashua and Rochester Railroad to continue in existence.   We have no occasion to controvert these or any other general propositions advanced for the defendant.   Neither do we lay down any general proposition in deciding for the plaintiff.   We deal only with this particular consolidation.

When these bonds were issued, the obligor's road was under a long lease to the Worcester and Nashua Railroad.   The latter was required by statute to guarantee the bonds.   It paid the interest directly to the bondholders, and after a time it mortgaged its road as a further security.   Soon after the bonds were issued, the Worcester and Nashua road was authorized to buy the bonds and stock of the Nashua and Rochester Railroad, with a proviso requiring the former to exchange the stock of the latter for its bonds on presentation.

Subsequently the consolidation was authorized, and was carried through.   The parties in uniting may not have dealt on a footing of perfect equality, as a dividend of three per cent per annum was paid the stockholders in the old corporations from the dates of the last dividends declared to the time of the union.

The dates of the last dividends declared by the two corporations are said to have been different. But the Legislature contemplated equality. It dealt with the shares in both of the old corporations as exactly equal to the shares in the new. These were to be exchanged share for share, and "upon such other equal terms for each such share as may be mutually agreed upon." Under such circumstances the addition of the franchise of another corporation to that of the obligor was represented by a determinate number of shares in the new corporation, that is to say, by a number equal to the number of shares in the corporation thus united to the obligor. In substance, the case is not different from what it would have been if the Nashua and Rochester Railroad had been authorized to issue the same amount of full paid stock, and to build an extension of its road over what was actually the Worcester and Nashua Railroad, and then to change its name.

It is usual for consolidating statutes to introduce more or less of the element of succession, or continuity of legal person as to existing rights and duties, notwithstanding the fact that in other respects the old and new corporations are not the same ; e. g. *Boston & Providence Railroad* v. *Midland Railroad,* 1 Gray, 340, 359; *Abbott* v. *New York & New England Railroad,* 145 Mass. 450, 453 ; *Pullman's Palace Car Co.* v. *Missouri Pacific Railway,* 115 U. S. 587. It is for the Legislature to say how far the new corporation shall be, as it were, the heir, executor, or continuer of the old. In the case at bar, we have to take into account the intimate connection of the two corporations with each other and with these bonds, the knowledge which the Legislature must be presumed to have had, the terms of the consolidation, and the very strong provisions on the question before us.

The act reads : " The corporation so established shall . . . be subject to all the duties, restrictions, obligations, debts, and liabilities to which, at the time of the union, either of said corporations is subject." And " all claims and contracts . . . against either corporation may be enforced by suit or action, to be commenced and prosecuted . . . against the corporation to be established under this act." We are of opinion that these words are too strong for the defendant's argument, and that, whether

the plaintiff was entitled to demand shares in the new company or not, it was entitled to hold the defendant to its predecessor's contract. When the defendant failed to deliver stock, either in the new company or the old, on demand, it became liable to the damages agreed as of that date. As in our view the plaintiff's right to demand stock was unabridged by the consolidation, its acceptance of interest from the new corporation had no more effect than acceptance of it from the old one. It had a right to make its election when it chose.

*Judgment for the plaintiff affirmed.*