# Bratten, Appellant, *v.* Catawissa Railroad Company.

*Railroads—Corporations—Bonds—Preferred stock—Conversion of bonds into stock.*

Where a bond issued by a railroad company recites that the holder of the bond "shall be entitled at any time after fifteen years from the date thereof to convert the principal sum into preferred stock of the said company," and it appears that at the date of the bond the company had no actual right to issue preferred stock, but that by the acceptance of an act of assembly previously passed, it would immediately acquire such right, the company must at the expiration of fifteen years comply with the demand of a bondholder for the conversion of the bond into stock, or answer in damages to the extent of the market value of the stock at the date of the demand. In such a case it is no answer to the demand that the company had no stock, and could acquire none except by bidding it up in the open market to a ruinous rate. It is also no answer that no other bondholder had made such demand.

*Contract—Construction—Surroundings of party.*

The surroundings of the parties at the time of making the contract and the subject-matter thereof are always admissible to ascertain their intention, if their expression be ambiguous or disputable.

Argued Jan. 5, 1905. Appeal, No. 175, Jan. T., 1904, by plaintiff, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1901, No. 3698, on verdict for defendant in case of James H. Bratten v. Catawissa Railroad Company. Before DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Assumpsit for breach of contract. Before FINLETTER, P. J.

The facts appear by the opinion of the Supreme Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*D. Stuart Robinson*, of *Beck & Robinson*, for appellant.—Wherever a latent ambiguity exists and words of description have a double application, resort may be had to the text or to the situation of the parties and the circumstances under which it was entered into, for the purpose, not of changing the writing, but of furnishing light by which to ascertain its actual

significance: Runkle v. Burnham, 153 U. S. 216 (14 Sup. Ct. Repr. 837); Hurley v. Brown, 98 Mass. 545; New England Dressed Meat, etc., Co. v. Standard Worsted Co., 165 Mass. 328 (43 N. E. Repr. 112); Ellis v. Lane, 85 Pa. 265; Dixon-Woods Co. v. Phillips Glass Co., 169 Pa. 167.

Where there is a doubtful or ambiguous meaning, it will be considered most strongly against the person using the language: Noonan v. Bradley, 76 U. S. 394.

*Geo. Tucker Bispham*, with him *Charles Heebner*, for appellee, cited: Storrow v. Texas Consolidated Compress & Mfg. Assn., 87 Fed. Repr. 612; Kirk v. Nice, 2 Watts, 367.

OPINION BY MR. JUSTICE DEAN, March 6, 1905:

The question is as to the interpretation of the obligation of a bond secured by mortgage, delivered by defendant to M. P. Hutchinson, June 15, 1871, and the ownership of which by regular assignment and transfer had passed to Bratten, this plaintiff. The bond is dated October 1, 1870, as the day of issue, is in the sum of $500 and one of four bonds of a like sum issued at the same time to the same payee and of which plaintiff became the owner. Each bond, after providing for semiannual payment of interest at seven per cent, contains this stipulation:

"That the holder of this bond shall be entitled at any time after fifteen (15) years from the date thereof to convert the principal sum into preferred stock of the said company at par upon surrender of this bond with the coupons not due annexed."

On July 27, 1900, plaintiff notified the company in writing that his four bonds would be due August first following and that he demanded their conversion into preferred stock in accordance with the provision in the bonds and mortgage. The company refused to comply with the request, but the 27th of November following made this proposition in writing to plaintiff: "You are herewith tendered the sum of $2,036.33 August 1, 1900, at the rate of six per cent per annum to this date." Which tender the plaintiff refused. The company had issued and there were then in the market two issues of its pre-

ferred stock, one called the " old preferred " and the other the " new preferred " each at par value of $50.00 per share and as plaintiff averred and proved selling in the market at $58.00 per share. He brought suit against defendant for damages, claiming the market price of forty shares of the preferred stock with interest from August 1, 1900, the date of his demand for conversion. The court below directed a verdict for defendant and plaintiff appeals.

At the date the bonds matured there were but two classes of stock, common and preferred, and in the fifteen years before maturity the company had issued no other. By the act of incorporation of the company, March 21, 1860, P. L. 234, it had authority to issue $3,350,000 of stock, $2,200,000 of preferred and $1,150,000 of common, each share of the par value of $50.00; of the preferred the act itself directed that 3,000 shares should be applied in discharge of a " confidential " debt to the Erie Railroad Company. All the stock, common and preferred, specifically mentioned in the act had prior to 1869 been issued, at least in the minutes of the company for that year it is called " outstanding." But in the original act was this further provision, " And the said corporation may by a vote of its preferred stockholders at a meeting duly and specially convened at which three-fourths in amount of said preferred stock shall vote in favor thereof, shall have a right to increase the amount of the preferred or common stock for real estate for use of said company or for the extension of its road."

Under this authority the company determined to extend its road to Williamsport. A meeting of the preferred stockholders was called, which meeting on September 16, 1870, resolved to execute a mortgage upon all its property to secure a loan of $1,000,000 and issue bonds to that amount in denominations of $500 and $1,000 to be used in the construction of the extension to Williamsport; the bonds to be payable, principal and interest, at the end of thirty years or be convertible at the end of fifteen years into preferred stock at the option of the holder. The plaintiff's bonds are part of those authorized by this resolution at this meeting of preferred stockholders. The legislature by Act of December 29, 1869, P. L. 1870, authorized all corporations to increase their capital stock fifty per cent of any amount theretofore authorized, provided the

authority to increase should not apply to any corporation until it duly accepted the act. The Catawissa Company did not accept the act until September 28, 1871, hence, although the authority existed in 1870 to increase the debt fifty per cent it was ineffectual so far as concerned defendant until it had accepted the act. But on October 5, 1872, more than a year after it had accepted the act, the company authorized an issue of 20,000 shares equal to $1,000,000 par value of preferred stock; this is called the "new preferred."

It may be conceded that under the act of 1869 authority to increase the debt fifty per cent had not then become operative, yet full authority to make the extension to Williamsport had been conferred by the act of 1860, and full authority to increase the debt was in existence by the act of 1869 and became effective as to this company as soon as the simple formality of acceptance was observed. This was the condition of affairs when the preferred stockholders met on September 16, 1870, and authorized the execution of the mortgage and bonds.

It is not necessary in this case to discuss the respective rights of common and preferred stockholders, or the relative rights as to each other of first, second and third preferred stockholders. No such questions arise here. The holders of the common stock are not interested or, if they are, they are not parties to the issue. The question is, what is the right of this bondholder by the terms of his bond against the company which issued it? "The surroundings of the parties at the time of making the contract and the subject-matter thereof are always admissable to ascertain their intention, if their expression be ambiguous or disputable:" Dixon-Woods Co. v. Phillips Glass Co., 169 Pa. 167; Ellis v. Lane, 85 Pa. 265. Under the act of 1860 there was an authorized issue of 44,000 shares of preferred stock but ten years of construction work had been going on and this had all been used. There was none in the treasury, and, so far as appears, none in the control of the company. A mortgage had been executed and recorded which provided that the bonds should be payable in fifteen years at the option of the holder by converting them into preferred stock; they could not have meant preferred stock then in existence, for none, as they knew, was within reach of the company. But fifteen years would elapse before the option by

the holders of the bonds could be exercised. The authority to create the new preferred stock lawfully under the act of 1869 by merely filing a certificate of the president and treasurer of the company with the auditor general that it had accepted the act, would apply the act to this company. With this knowledge, the company issued this bond. According to its express terms this plaintiff now demands his preferred stock. The company knew he had such right and might claim to exercise it in fifteen years; what is their answer to his demand? That none of the other bondholders have demanded preferred stock, and in substance, that the company has no preferred stock to be used for such a purpose. It tenders him the face value of his bonds in money. This was in plain disregard of its obligation and of the bondholders' right.

We do not say the company was bound to go into the market and buy up its own stock at any price to deliver to the optional bondholders; if all the bondholders exercised their option at the same time and demanded preferred stock, and the company had been compelled to go into the open market and buy, that would have sent the price up, as appellee's counsel argues, to a ruinous point; but prudent business men need not have subjected their company to this alternative. Fifteen years before, this company had delivered these bonds; with the mortgage and bonds before them the directors knew that about the end of that period some of the bondholders, perhaps most of them, would demand a conversion; yet with all this time to prepare for the demand they seem not to have had in their treasury or within their reach forty shares of preferred stock to meet plaintiff's demand. It is argued by appellee's counsel that at the time of the demand the entire issue of the authorized stock was then outstanding and the company had none and could get none, unless a new issue of the preferred stock was authorized. This is no answer to a creditor who stands on the letter of his bond. Without intimating what the right of the creditor might have been if a "second preferred" stock had been tendered him, the company offered him nothing but the face of his bond in money; he was not bound to accept it. If he had waited for thirty years until the principal of the bond became payable absolutely in money and the company had answered his demand by saying it had no money

and he must wait, the probability is, he would at once have resorted to suit on his mortgage and compelled payment; because of a denial of his right to preferred stock he resorts now to a suit in assumpsit, offering his bond as evidence of the measure of damages, and he is clearly within his right. That is our construction of the bond.

The court below erred in directing a verdict for the defendant. The judgment is reversed and it is now ordered that judgment be entered for plaintiff in the sum of $2,320, with interest from August 1, 1900, the date of his demand for conversion.