**P. W. BROOKS & CO., Inc., v. NORTH CAROLINA PUBLIC SERVICE CO.**

District Court, M. D. North Carolina. May 16, 1929.

No. 70.

North Carolina with its principal place of business at Burlington, N. C., on May 1, 1919, executed a mortgage on its real estate and other property, including its franchises, to the Guaranty Trust & Safe Deposit Company, a corporation of the state of New York, as trustee, to secure the payment of $2,000,000 of 15-year gold bonds bearing 6 per cent. interest. The mortgage is in the usual form of corporate mortgages. In the event of a default in the payment of principal or interest or such other default as affects the bondholders as a class, it is necessary for one-third in amount of the bond‑holders to make demand on the trustee, and it is then required to proceed in accordance with the demand. It is further provided that this remedy shall not be exclusive of any other remedy or remedies and that "each and every such remedy shall be cumulative and shall be in addition to every other remedy now existing at law or in equity or by statute."

The company was unable to market its bonds and on March 25, 1921, by authority of its directors, it executed an "Additional Interest Indenture" whereby it authorized payment of 7 per cent. interest ·on these bonds and gave to the holders of the said 7 per cent. bonds the privilege of converting the bonds at any time before redemption into 6 per cent. bonds. It reserved the right to redeem the bonds on any interest-paying date prior to their maturity on May 1, 1934, on the publication of a notice of redemption for four successive weeks immediately preceding the date of redemption. The holders of the bonds were required to give 10 days' notice of their intention to convert and to deposit the bonds with the trustee, the Empire Trust Company, of New York City, designated in the "Additional Interest Indenture."

In 1924, the North Carolina Public Service Company absorbed the Piedmont Power & Light Company and assumed all of its obligations, including the mortgage, additional interest indenture, and bond issue thereunder above described.

On July 26, 1926, the North Carolina Public Service Company, through its directors, passed a resolution to redeem all of the bonds in question on November 1, 1926, the next interest-paying date, and caused to be deposited with the trustee, the Empire Trust Company, in New York City, funds sufficient to pay off all outstanding bonds with inter‑·est, according to the amount due on the bonds which were then outstanding. On July 31, 1926, it published a notice of its intention to redeem the bonds on November 1 next and

Hobgood & Vinson, of Greensboro, N. C., and Cook, Nathan & Lehman, of New York City (Chester Rohrlich, of New York City, of counsel), for plaintiff.

W. S. O'B. Robinson, of Charlotte, N. C., and Broadhurst & Robinson, of Greensboro, N. C., for defendant.

HAYES, District Judge. The Piedmont Power & Light Company, a corporation of

continued to publish said notice each week until November 1. In this notice, it announced that the privilege of converting 7 per cent. bonds into 6 per cent. bonds expired on July 31, 1926.

On September 29, 1926, the plaintiff deposited with the trustee $25,000 of the 7 per cent. bonds and demanded their conversion into 6 per cent. bonds. The notice was ·in writing and notice also was given to the defendant. It refused to convert the bonds, taking the position that it had the right to terminate the conversion privilege when it deposited the ·money with the trustee and published its first notice to redeem on July 31, 1926. Later the plaintiff notified the trustee and the defendant that it had in its possession an additional $48,500 of bonds giving the serial numbers thereof, and demanded their conversion, expressing its readiness, ability, and willingness to tender the bonds if the company would permit their conversion. It pursued the same course with· respect to an additional $13,500 of bonds, and all of this occurred more than 10 days prior to ·the 1st day of November, 1926. The defendant ignored these demands. The plaintiff then surrendered the three blocks of bonds for redemption to the trustee and accepted the payment of the principal and interest according to the amount due on the 7 per cent. bonds, but stated it did so without waiving its rights to damages for the refusal to convert the bonds and accepted the money to mitigate damages. The plaintiff now brings this action to recover the difference in value between the 7 per cent. bonds and the 6 per cent. bonds at the time of the demand, which amounted to $9,-667.

It is a common practice for corporations, especially railroads, when executing mortgages to secure the payment of bonds, maturing over a course of several years, and in order to make the investment as attractive as possible to the buying public, to confer upon the holders of such bonds the privilege of converting them, prior to their maturity, into shares of the capital stock of such corporation. And the validity of such a provision has been recognized throughout this country to such an extent that it is needless to cite any authority to support this view.

When a corporation refuses to convert the bonds in accordance with the contract upon the election and demand of the bond holder, its refusal constitutes a breach of its contract for which the bond holder is entitled to sue for his damages. Chaffee v. Middlesex R. R. Co., 146 Mass. 224, 16 N. E. 34; Bratten v. Catawissa Ry. Co., 211 Pa. 21, 60 A. 319; John Hancock Mut. Life Ins. Co. v. Worcester R. R. Co., 149 Mass. 214, 21 N. E. 364; 33 Cyc. 453; 1 Cook on Corporations (Ed. 1908) p. 772.

The refusal of the corporation to make the conversion at the demand of a bondholder creates in its favor a right of action which does not affect the other bondholders as a class, and it is a right which it may assert without the necessity of resorting to the trustee as an intermediary. The usual requirement for the trustee to prosecute all actions clearly contemplates such actions as are in the interest of the bondholders as a class and is not intended to apply to a single cause of action which cannot affect the bondholders as a class. Pigeon River Ry. Co. v. Champion Fibre Co. (C. C. A.) 280 F. 557. It is true that the rule is well settled that in matters affecting the remedy the court will regard neither the place of making nor place of performance, but will be governed by the law of the state where the remedy is sought, and that in applying the lex fori the federal courts will adjudicate the rights of the parties as will the courts of the state. Pritchard v. Norton, 106 U. S. 124, 1 S. Ct. 102, 27 L. Ed. 104; Hogue-Kellogg Co. v. G. L. Webster Canning Co. (C. C. A.) 22 F.(2d) 384.

The defendant relies on the case of Jones v. Atlantic & Western R. R. Co., 193 N. C. 590, 137 S. E. 706, in support of its contention that the plaintiff has no right to maintain this action. An examination of this case discloses that the reasoning of the decision is based on. the proposition that the complaint which asked that all of the property which was embraced in the mortgage be placed in the hands of a receiver and prayed for a winding up of the corporate affairs, taking them completely out of the hands of the trustee, could not be granted. That suit was against the property embraced in the mortgage, while the plaintiff's action here is only to recover a judgment for damages for breach of a personal covenant to the plaintiff.

The demand by the plaintiff on the trustee and the defendant to convert the last two groups of bonds of $48,500 and $13,500 into 6 per cent. bonds, its readiness and willingness and. offer to deposit them with the trustee if the defendant would permit their conversion, and when considered in connection with the attitude of the defendant with respect to the $25,000 of bonds

which plaintiff actually did deposit for conversion, is sufficient compliance by the plaintiff with the terms of the mortgage to entitle it to the conversion. The deposit of the bonds with the trustee would have availed nothing. The law does not require a person to do a vain thing. The defendant had arbitrarily announced to the world that it would not permit a conversion after July 31, 1926. Its whole attitude with the plaintiff showed that it would not recede from that position.

The holder of bonds which contain a provision for the payment of a definite sum of money with interest, and which by reference to another instrument give the holder the option to convert the bonds into another class of bonds or into stock, has the privilege of electing between two alternative modes of satisfaction of such bonds. He does not have the right to both. The exchange discharges the obligation; or the payment of the bonds operates to discharge it. He cannot resort to both methods. Indeed, it has been held that where he once elects to a mode of settlement, he is compelled to abide by that election. Bratten v. Catawissa Ry. Co., supra.

In Denney v. Cleveland & Pittsburg R. R. Co., 28 Ohio St. 108, Chief Judge Scott, in an able opinion, sustained a demurrer to the plaintiff's action because it was not alleged that the plaintiffs were, at the commencement of their action, the owners and holders of any of the convertible bonds issued by the defendant. In that case, the plaintiffs owned some bonds which it had demanded to be converted into stock. They also acquired by assignment the claims for damages of other bondholders who had been refused the privilege of converting their bonds into stock by the defendant. Chief Judge Scott said:

"We think each of these bonds, considered in connection with the clause for conversion, may be regarded as an alternative contract, wholly executory on the part of the defendant. The obligations of this contract might be discharged in one or the other of two ways; and it was at the option of the holder of any of the bonds to determine in which of the two ways he would require them to be satisfied. He might wholly waive his right to have them converted into stock; might demand and receive payment of the interest as it accrued on them, and of the principal sum at maturity. If he accepted payment in this way, the contract would be fully discharged, and he would have no ground to complain that it had not been otherwise discharged."

Quoting again from the opinion:

"But if the company were to refuse the conversion of the bond into stock upon his demand, several courses would be open to him at his election:

"1. He might waive, for the present, the right thus denied him, continue to draw his interest as it might accrue, and demand the principal at maturity, or renew his demand for conversion at any time thereafter before the payment of the principal.

"Or, 2. He might divest himself of all interest in the subject-matter, and invest another party with all his rights, including the right of election as to the mode of performing the contract, by the sale and transfer of the bond.

"Or, 3. He might stand upon and abide by the election and demand already made, and on his right to convert the bond into capital stock; and might by action recover, by way of damages for the breach of the contract, the full market value of the stock wrongfully withheld from him. But such recovery would be a bar to any other or further suit on the bond; and the payment of such damages would place the defendant in the same legal position as though the stock had been issued upon demand.

"And in case such action were brought for the refusal to convert the bond into stock, we think it very clear, that the plaintiff must allege in his petition not only his ownership of the bond at the time of the demand for conversion, and that he then offered to surrender it for cancellation upon such conversion; but that he was still the owner and holder of such bond, and now brought it into court for cancellation upon his recovery of damages for the breach of its stipulations."

And it would seem that the privilege of conversion attaches only to the person who is the actual holder of the bonds, because Judge Scott further states:

"The truth is, as we apprehend, that by the express terms of this convertible clause, the conversion of the bond into stock is made to depend wholly upon the pleasure of the *holder of the bond*. The right to demand its conversion is vested in him just so long as he continues to be such holder and no longer. And when he transfers the bond, the right of choosing whether it shall be converted into stock or not, passes by the transfer to the new owner and holder, and no right of action for its non-conversion remains in the former owner. The terms of the clause clearly connect the right of conversion with the ownership of the bond as indissolubly as

a mortgage is connected with the debt, the payment of which it secures."

Plaintiff relies on the case of Chaffee v. Middlesex R. R. Co., 146 Mass. 224, 16 N. E. 34. In that case plaintiff held bonds of the defendant which gave it the privilege of converting them, at any time before their maturity, into stock of the defendant company. The defendant declined to convert the stock and paid the bonds of the plaintiff. Simultaneously with the surrender of the bonds and the payment therefor, the defendant executed its agreement with the plaintiff as follows:

"Boston, February 2, 1885.

"Samuel Appleton, Esq., Pres., Manufacturer's Fire & Marine Insurance Company—Dear Sir: I hand you herewith check for $26,000, being the amount of the fifty $500 bonds with coupon attached of the Middlesex Railroad Company, surrendered by your Company to the Middlesex Railroad Company this morning, and I expressly reserve on behalf of the Middlesex R. R. Co. all the rights of the Manufacturer's M. & F. Ins. Co. to the stock of the Middlesex R. R. Co., which you have demanded in exchange for the bonds, and which I have refused to deliver, or for the value of such stock over and above the par value of the bonds surrendered; it being expressly agreed that the acceptance of the above sum of $26,000 by your Company is not a waiver of its rights to the stock or its value, if it has any. Yours, Middlesex Railroad Company, by Charles E. Powers, Pres."

It is true that plaintiff was allowed to recover its damages. We have no such agreement in the case at bar. The defendant was at all times insisting that there was no right of conversion after July 31, 1926, and the tender by it of principal and interest was in complete discharge of the bonds. It asserted the unconditional right to discharge the bonds in this mode, and when the plaintiff accepted this mode of settlement, even though it did it while protesting and undertaking to reserve its rights to damages, for the wrongful refusal to convert, it extinguished its right of action for damages in our view of the case, and the Chaffee Case is not inconsistent with the views herein expressed.

On the question of the extinguishment of the subject-matter to which the claim in suit is incidental, or from which it arises, as barring the right to recovery, see Moore v. Fuller, 47 N. C. 205; Stewart v. Barnes, 153 U. S. 456, 14 S. Ct. 849, 38 L. Ed. 781; 33 C. J. 256.

In Savage v. U. S., 92 U. S. 382, 23 L. Ed. 660, plaintiff had the option of converting his treasury notes or asking payment in gold. The treasury tendered him legal tender which was worth 32 cents on the dollar less than gold. He protested against acceptance of the tender, but did accept the legal tender, and surrendered the notes. It was held that he was not entitled to recover the difference.

Under the law of North Carolina, the trustee has not the right to cancel the deed of trust until the debt which it secured has been paid, and if he does so the holder of bonds may subject the property to the payment of his debt. Wynn v. Grant, 166 N. C. 39, 81 S. E. 949.

Therefore, the contention of plaintiff that it had to accept the money paid it to reduce the damages, and to protect itself because the mortgage had been cancelled, is unfounded. If it be conceded that defendant wrongfully refused conversion and that plaintiff was entitled to damages therefor, plaintiff was not required to accept a sum less than the amount due it when it was tendered only as a complete discharge of the obligation, and such a tender could not even stop the running of interest. Consequently, plaintiff cannot recover in this case.