HENRY W. HOLLAND *vs.* CHESHIRE RAILROAD COMPANY.

Suffolk.     January 16, 17, 1890. — February 27, 1890.

Present: DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Railroad — Issue of Preferred Stock — Election — Reasonable Time.*

A railroad corporation voted, on December 10, 1851, to issue preferred stock to raise money to pay a floating debt and bonds due July 1, 1852, four shares of the preferred to be exchanged for three shares of the old stock and a cash payment. A bonus was to be given if a certain per cent of the last should be paid with interest between January 1 and February 1, 1852, the remainder to be paid on June 15 following. Dividends were to be paid at a certain rate on the preferred stock, and every stockholder subscribing "at any time" after February 1, 1852, should be "entitled to have his stock preferred in like manner." On April 1, 1888, a stockholder tendered three shares of the old stock, with the requisite cash, and demanded four shares of the preferred stock, and it was refused. The average rate of dividends paid on the preferred stock up to that time had been much less than the proposed rate, but the corporation was then prosperous, and that rate had been maintained for some little time. *Held*, that such stockholder was obliged to elect to take the preferred stock, if not on or before June 15, 1852, within a reasonable time at least; and that he had failed to do so, and was not entitled to the preferred stock.

ACTION, described in the writ, which was dated July 9, 1888, as an "action of tort and contract," to recover damages because of the non-delivery to the plaintiff of four shares of preferred stock in the defendant corporation, and for the conversion of such four shares. The answer contained a general denial, and set up the statute of limitations. Trial in the Superior Court, without a jury, before *Pitman*, J., who reported the case for the determination of this court, in substance as follows.

The following facts were agreed. The directors of the defendant corporation, on November 18, 1851, duly voted to call a special meeting of the stockholders on December 10 following, "to take into consideration the subject of preferred stock for the purpose of paying off the floating debt and the bonds of the company becoming due July 1, 1852, and also any other modes of procuring means of paying said debt and bonds, and to act in relation to the above as may be thought proper." The stockholders on that day, at a meeting duly called and held in pur-

suance of the above vote of the directors, passed the following vote :

" Voted, that the directors of the Cheshire Railroad Company be authorized to create and issue to stockholders five thousand five hundred shares of new stock at par of one hundred dollars per share, on the following terms and conditions, viz. :

" *First.*   Every shareholder shall be entitled to subscribe for and take one new share for every three old shares which he may hold, or in that proportion for a less number, and all subscribers as aforesaid shall be entitled to a dividend of three dollars per share on every three old shares to one new share subscribed for on payment of twenty per cent on said new shares with interest after the first day of January next or before the first day of February next ; and on payment of said twenty per cent the certificate of such old shares shall be surrendered, and a new certificate issued for every three old and one new share, to be designated preferred stock, and the said three old shares and the twenty per cent paid on the new share shall be credited as eighty per cent paid on four shares of preferred stock.   The remaining twenty per cent on the preferred stock shall be payable on the 15th of June next, and the company shall have the same rights and remedies in the collection of said twenty per cent, and such assessments shall be, regarded and treated to all intents and purposes as an original assessment within the original par value of said stock.

" *Second.*   The directors are hereby authorized and empowered to declare and pay semiannually dividends out of the net earnings of this company, not exceeding three per cent semiannually, on such preferred stock, and no dividends shall hereafter be paid upon any other stock of the company now in the hands of stockholders, except the same be paid out of the net surplus earnings of the company after the payment of the dividends on the preferred stock, and the net earnings of the company are hereby pledged for the payment of dividends to the amount of six per cent per annum on the preferred stock created in pursuance of said vote.

" *Third.*   If after the payment of the dividends upon said preferred stock out of the net earnings of the company there shall be a surplus remaining, semiannual dividends not exceeding six

per cent per annum shall be paid out of such surplus on all the old stock remaining unsurrendered, and if there remains any surplus of net earnings after the payment of all the dividends aforesaid, the same may be equally divided upon all the stock of the company, new and old, share and share alike.

" *Fourth.*    Every shareholder subscribing for his proportion of new stock at any time after the first day of February next shall be entitled to have his stock preferred in like manner as the above, and be entitled to all dividends declared after his subscription, adding interest from the date of the last dividend to the date of payment for said new shares.

" *Fifth.*    Payment of any of the assessments aforesaid may be made in cash or bonds of the company becoming due July 1st, 1852, and the dividends payable July 1st, 1852, shall be credited to the holders of preferred stock in payment of the assessment due June 15th, 1852, it being understood that assessments may be paid in full on and after January 1st, 1852."

On December 17, 1851, at a meeting of the directors, the following vote was passed : " Voted, that five thousand five hundred shares of new stock be created, and that the same be offered to stockholders agreeably to the terms of the vote passed at the special meeting of the stockholders held on the tenth day of December, A. D. 1851."

From January 1, 1852, until January 10, 1888, according to a schedule annexed to the report, the defendant had paid only fifty-one semiannual dividends on the preferred stock so created and issued, which dividends varied from two per cent to six per cent per annum, and amounted on an average to less than two and seven tenths per cent.    The last three dividends on the preferred stock, however, were at the rate of six per cent per annum, and the two preceding ones were at the rate of five per cent per annum.    The defendant received common stock and cash in exchange for the new preferred stock until February 28, 1855, at which date there were outstanding 21,582 shares of preferred and 681 shares of common stock, which shares, with the exception of 582 shares of preferred and 148 of common stock cancelled in 1863, constituted all the stock outstanding of the defendant corporation.    In 1870 and 1871 a committee of the directors, appointed " to confer with certain holders of

unpreferred stock who have asked or may ask attention thereto, with authority to arrange the same by purchase or otherwise and to use preferred stock in so doing if they shall think best," took from one Edwards eighty-two shares of the common stock which he had purchased, and gave him in return therefor fifty shares of preferred stock, being a portion of five hundred and ninety-two shares of preferred stock which the defendant had previously bought and owned, and which constituted a part of its assets. The plaintiff, who was the owner of three shares of the common stock, in April, 1888, tendered such shares, together with one hundred dollars, and demanded four shares of the preferred stock in exchange therefor. The defendant refused to accept the tender and to issue such preferred stock. The plaintiff also offered to pay the defendant whatever sum, if any, might be due for interest under the vote of December 10, 1851, less interest and dividend as provided therein, but the defendant refused to accept his offer. The preferred shares were worth, at the time of the plaintiff's tender, $115 per share in the market. The plaintiff contended that the transaction with Edwards was an issue of preferred stock to such Edwards under the vote of December 10, 1851.

The judge ruled, as matter of law, upon the pleadings and agreed facts, that the plaintiff could not recover, and found for the defendant. If upon the pleadings and facts agreed the plaintiff could not recover, judgment was to be rendered on the finding for the defendant; otherwise, the case was to stand for trial.

*H. W. Holland,* pro se.

*H. G. Parker,* for the defendant.

DEVENS, J. The meeting of stockholders of the defendant corporation when the vote was passed under which the plaintiff contends that he had in 1888 the right to surrender his old stock in the defendant company, and to subscribe for new and preferred stock according to the terms of the vote, was held on December 10, 1851. It was called by a vote of the directors of November 18, 1851, which set forth its object to be " to take into consideration the subject of preferred stock for the purpose of paying off the floating debt and the bonds of the company becoming due July 1, 1852, and also any other modes of procuring means of paying said debt and bonds, and to act in relation to

the above as may be thought proper." Under the first clause of the stockholders' vote, every stockholder was entitled to take one new share for every three old shares which he might hold, and was " entitled to a dividend of three dollars per share on every three old shares to one new share subscribed for on payment of twenty per cent on said new shares with interest after the first day of January next or before the first day of February next." Upon this payment the certificate of the old shares was to be surrendered, and " a new certificate issued for every three old and one new share, to be designated preferred stock." The remaining twenty per cent on the preferred stock was payable on the fifteenth day of the next June, the three old shares and the twenty per cent previously paid on the new shares being " credited as eighty per cent paid on four shares of preferred stock." The effect of this would be that every four shares of preferred stock would thus cost three shares of old stock and one hundred dollars in money.

It is the contention of the plaintiff, that, although "the remaining twenty per cent on the preferred stock " was made payable on June 15th next thereafter, this only refers to those who subscribed and made their first payment before February 1, in order to obtain the dividend of three dollars offered as a bonus for early subscription and payment; that the fourth clause of the vote, which provides that "every shareholder subscribing for his proportion of new stock at any time after the first day of February next shall be entitled to have his stock preferred in like manner as the above," recognizes the right of the stockholder to subscribe at any time thereafter. This clause should be construed in connection with the first, and provides, it may fairly be argued, only for those who, not having subscribed before February 1, still subscribe in season to make their final payment on June 15, when the last payment by those who had subscribed earlier was to be made. To construe it as the plaintiff does would make it destructive of the very object for which the stockholders by their vote were providing; viz. the raising of funds by which their floating debt and the bonds due July 1, 1852, could be paid. We have no occasion carefully to consider whether the time for subscribing is definitely limited by the last payment to be made on June 15, as, if no time is thus fixed, the

right of the plaintiff to subscribe must have been exercised within a reasonable time. The principle on which it is held that, where in an executory contract one stipulates to do some act and no time is limited, it is to be done within a reasonable time, applies where one is entitled to a privilege, or receives an offer of which he may at his option take advantage. He must avail himself of the privilege and exercise his option within a reasonable time. *Wilson* v. *Clements*, 3 Mass. 1, 13. *Atwood* v. *Cobb*, 16 Pick. 227. *Loring* v. *Boston*, 7 Met. 409, 414.

When circumstances have wholly changed, when the preferred stockholders have as yet received for many years only about two and a half per cent of the six per cent per annum promised them, as appears by the exhibit annexed to the report, and when by their means and money the corporation has been brought into a comparatively prosperous condition, and when thirty-six years have elapsed since the plaintiff was offered the option of taking the preferred stock, it must be held that his demand now to be allowed to take it on the terms of the vote is unreasonable, and one that the defendant is not obliged to entertain. Unless the plaintiff is ready to put himself in the position of the preferred stockholders, — and he makes no proposition of this character, — to whom large amounts of unpaid dividends are due, it would be obviously unjust that he should at this time come in on an equality with them. He made his election, as they made theirs. The price which the preferred stock now bears is the result of the risks that the owners have taken and the exertions they have made while he has remained quiet.

The plaintiff urges that the construction which the corporation itself has given to this vote recognizes the right that he has now to demand preferred stock. He principally relies on a transaction with one Edwards, by which, in 1870, Edwards relinquished to the corporation, under votes of the corporation passed in 1870 and 1871, some eighty-two shares of common stock which he had purchased, receiving in exchange fifty shares of preferred stock, these latter shares being a portion of certain preferred shares which the corporation had itself previously purchased, and which constituted a part of its assets. This transaction was certainly not an issue of preferred stock under the vote of 1851. Its terms and conditions were entirely different, and they do not

affect the present discussion. The vote authorized a committee to confer with certain holders of unpreferred stock, "with authority to arrange the same by purchase or otherwise, and to use preferred stock in so doing if they shall think best," and the transaction which took place was a sale of certain shares of old stock for certain preferred stock then owned by the company.

As we are satisfied that the plaintiff has sustained no wrong, it is unnecessary to consider whether, if he had, he has adopted the correct remedy.                    *Judgment affirmed.*