GRIMWOOD et al. v. MUNSON S. S. LINE.

(Circuit Court of Appeals, Second Circuit.   May 4, 1921.)

No. 183.

1. **Shipping ☞108—Shipper held not to have established damage caused by defendant's refusal to furnish ships under agreement.**

In a suit for breach of contract to furnish ships to transport plaintiff's coal into Mexico, plaintiffs proved no legally recoverable damages, where they did not show that they had bought any coal for shipment into Mexico, or had sold coal there for importation from the United States, and even if they had coal to ship they were bound to get other tonnage, and could recover of the shipowner only the difference between the contract price and the price they had paid.

2. **Shipping ☞108—Contract to furnish ship for transporting coal held not a requirement contract.**

A contract whereby shippers agreed to send all their coal to Mexico by defendant's ships, but did not bind themselves to ship any coal at all, and their shipments were so variable that no reasonable estimate of their tonnage requirements could be made, does not fall within the exception of the general rule that executory agreements must be for ascertained quantities, which applies in case of established business whose future requirements may be reasonably estimated.

3. **Estoppel ☞63—Shipowner cannot attack contract after assigning another reason for nonperformance.**

A steamship company, which gave as the reason for refusing to furnish ships for transportation of coal to Mexico the unsettled conditions in Mexico, cannot, after suit for breach of contract is brought against it, defend on the ground that the contract was not a requirement contract, but a wish, will or want, contract, and therefore void.

4. **Shipping ☞108—Previous breach by shipper is waived by assignment of another reason for refusal to furnish ships.**

A previous breach by shipper of a contract to ship all its coal to Mexico by defendant's steamers is waived, where defendant assigned as its sole reason for refusing to supply ships to the shipper the unsettled conditions in Mexico.

5. **Shipping ☞108—Failure to ship any coal is not breach of requirement contract.**

A contract to ship all the coal required in plaintiff's business by defendant's vessels is not breached by the failure to ship any coal, if no shipments were needed in plaintiff's business, and none were shipped through other parties.

In Error to the District Court of the United States for the Southern District of New York.

Suit by Adolfo Grimwood and another, copartners, doing business under the name of A. Grimwood & Co., against the Munson Steamship Line. Judgment for defendant, and plaintiffs bring error. Affirmed.

Kellogg, Emery & Cuthell, of New York City (Frederic R. Kellogg and Earle L. Beatty, both of New York City, of counsel), for plaintiffs in error.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (John M. Woolsey, Edwin S. Murphy, and Theodore M. Hequembourg, all of New York City, of counsel), for defendant in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WARD, Circuit Judge. This case has been here on a former occasion, 249 Fed. 722, 161 C. C. A. 632. The plaintiffs are engaged in the business of selling coal and coke in Mexico imported from the United States. January 31, 1912, they made a contract in writing with the defendant, whereby they agreed to ship all their coal and coke from the United States to Mexico between January 1, 1913, and December 31, 1915, by the defendant's steamers and the defendant agreed to furnish steamers to carry the same. The parties had been doing business together on these terms since 1909.

March 17, 1915, the plaintiffs called for a steamer which the defendant refused to furnish on the ground of the chaotic conditions in Mexico. November 4, 1915, the plaintiffs called for four steamers, which the defendant refused to supply because it "did not feel called upon to furnish steamers for Mexico at present, owing to the unsettled conditions which prevail there." November 18, plaintiffs modified their demand in certain immaterial particulars, and the defendant, November 23, replied that it did not consider that it was under any obligation to furnish the steamers. No new reason being assigned, it stood upon the reason theretofore given.

Thereupon the plaintiffs brought this suit. The defendant in its answer denied that the contract set up in the complaint was a valid and binding contract, and pleaded in defense that, if it were, the plaintiffs had themselves broken the contract by not shipping any coal between June, 1913, and March, 1915, a period of some 20 months.

[1] Judge Mayer, assuming, without deciding, that the contract was valid, held that the plaintiffs had proved no legally recoverable damages, because they had not shown that they had bought any coal in the United States for shipment to Mexico, or that they had sold any coal in Mexico to be imported from the United States. This was quite in accord with our former decision that the agreement for transportation was an incident of the plaintiffs' actual business of selling coal in Mexico and that they were not speculating in tonnage as a commodity. If they had no coal to ship, they were not damaged by the defendant's refusal to supply tonnage. On the other hand, if they had coal to ship, they were bound to get other tonnage, and recover of the defendant the difference between the contract price and the price they had to pay. The measure of their damages would not be the loss of profits from their coal business in Mexico, but the extra price which they had to pay for the tonnage not furnished. An admirable discussion of the precise question is to be found in Irvine v. Midland Great Western Railway Co., 6 Law Reports (Ireland) Common Law (1880). See, also, The Oregon v. Pittsburgh & L. A. Iron Co., 55 Fed. 666, 5 C. C. A. 229; Hughes v. Coal Co., 269 Fed. 589.

[2] The further question has been argued whether the contract was binding at all. This depends upon whether it was a requirement contract, or a wish, will, or want contract. While the plaintiffs agreed to send all the coal and coke they shipped from the United States to Mexico by the defendant's steamers, they did not bind themselves to ship any at all. How very variable their shipments were is to be seen from the fact that in the year January 1, 1909, to January 1, 1910, they

shipped 49,520 tons; June 1, 1910, to June 1, 1911, 133,400 tons; June 1, 1911, to December 31, 1911 (seven months), 21,114 tons; January 1, 1912, to December 31, 1912, 63,517 tons; January 1, 1913, to December 31, 1915, 66,441 tons.

After June 28, 1913, they shipped no coal at all to Mexico. With these facts in mind, how can it be said that the plaintiffs' business was one in which a reasonable estimate of its tonnage requirements could be made? The contract does not fall within the exception to the general rule that executory agreements of purchase and sale must be for ascertained quantities which applies in case of established businesses whose future requirements may be reasonably estimated.

[3] However, as the defendant gave, as the only ground for refusal to furnish the tonnage, the chaotic state of affairs in Mexico we think that it could not, after suit brought, defend on the ground that the contract was not a requirement contract, but a wish, will, or want contract. Ohio & M. R. Co. v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693; Luckenbach Co. v. Grace & Co., 267 Fed. 676.

[4, 5] The defendant argues that this principle does not apply, because the plaintiffs themselves first broke the contract by not shipping any coal at all for some 20 months. If, however, the agreement is a requirement contract, this would not be a breach, if the plaintiffs did not need the tonnage in their business. Even if it were, the defendant waived the breach by basing its refusal to furnish tonnage solely on the chaotic conditions in Mexico. If during this period the plaintiffs had shipped coal and coke to Mexico through other parties, the case would be more like Loudenback Fertilizer Co. v. Phosphate Co., 121 Fed. 298, 58 C. C. A. 220, 61 L. R. A. 402, on which the defendant relies. In it the plaintiff's business involved manufacturing acid phosphate from crude phosphate rock, and it contracted to buy all the phosphate rock it needed from the defendant. For two years the plaintiff ceased manufacturing phosphate, because it found it cheaper to buy it. When, however, the price for it rose, it called upon the defendant for a large quantity of crude phosphate rock. The court held that buying the manufactured acid phosphate from other parties was a breach of the contract, and the defendant, not having waived the breach, was under no obligation to furnish the crude phosphate rock.

The judgment is affirmed.