## CHEATHAM v. WHEELING & L. E. RY. CO.

District Court, S. D. New York. January 25, 1930.

Charles R. Bradbury, of New York City, for the motion.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Theodore Kiendl, Russel S. Coutant, and George M. Skinner, all of New York City, of counsel), opposed.

WOOLSEY, District Judge. · The motion is denied because the record has been opened by it and the complaint does not set forth any cause of action for damages. The complaint, therefore, must be dismissed, and judgment entered for the defendant, unless within 20 days from the service on its attorneys of the order entered in pursuance of this decision, the plaintiff files and serves on the defendant's attorneys a verified amended complaint avoiding the mistakes herein found in its present pleading.

I. The jurisdiction of this court in this action—between a citizen and resident of New York State and a corporation of Ohio—

is based on diversity of citizenship, and on the fact that the amount in controversy exceeds three thousand dollars.

The complaint alleges, and the answer admits, the following facts:

The defendant was organized in 1916 under the laws of the state of Ohio, on the reorganization of the former the Wheeling & Lake Erie Railroad Company.

At the time of the reorganization, the defendant issued three classes of stock, the so-called prior lien stock, preferred stock, and common stock. The prior lien stock is not involved in this action.

The certificates representing preferred stock and the certificate of incorporation of the company contained provisions, somewhat different in form, but each substantially to the effect that any holder of preferred stock, at any time after November 1, 1919, on presentation and surrender to the corporation at its stock transfer office or agency in New York, if he so elected, would be entitled to convert his preferred stock into common stock at the rate of dollar for dollar of par value, with a cash adjustment of dividends, under suitable regulations to be prescribed by the board of directors.

The certificate of incorporation of the defendant company provides:

"The Prior Lien Stock and the Preferred Stock shall also be convertible into the Common Stock as hereinafter provided and, when and as so converted, such Prior Lien Stock and such Preferred Stock shall be cancelled and retired and shall not be reissued as such, and the Common Stock shall be increased by an amount thereof equal to the amount of the Prior Lien Stock and of the Preferred Stock or of either thereof so converted."

"Any holder of the Prior Lien Stock or of the Preferred Stock may at any time after November 1st, 1919 (unless the shares held by him shall have been called for previous redemption as aforesaid) convert such stock into the Common Stock of the Corporation at the rate of dollar for dollar of par value, and on presentation and surrender to the corporation at its stock transfer office or agency in the Borough of Manhattan, New York City, or at any place or places where the corporation shall maintain a transfer agency, of the certificates for shares of the Prior Lien Stock or the Preferred Stock so to be converted, the holder of such stock shall, if he so elects, be entitled to receive in exchange therefor certificates for shares of the fully paid and nonassessable Common Stock of the corporation at the rate afore-said, with a cash adjustment of dividends, all under suitable regulations to be prescribed by the Board of Directors of the corporation."

The preferred stock certificates issued by the defendant contained the following provision:

"Shares of Prior Lien Stock and of Preferred Stock are convertible any time after November 1st, 1919 (except shares called for previous redemption) into Common Stock at the rate of dollar for dollar of par value upon surrender to the Company at its stock Transfer office or agency in the Borough of Manhattan, New York City, or any place or places where the Company shall maintain a transfer agency, of the certificates for shares of Prior Lien Stock or Preferred Stock so to be converted with a cash adjustment of dividends."

The complaint alleges that the plaintiff purchased 100 shares of the preferred stock of the defendant for the purpose of converting it into 100 shares of the common stock with the intention of selling that common stock on the 8th day of February, 1927, at $130 per share, and that by reason of the defendant's refusal to accept or convert the plaintiff's preferred stock into common stock the plaintiff was unable to make this sale to his damage in the sum of $4,200.

The method by which the plaintiff claims to have arrived at his damages is set forth in great detail in the complaint and will be hereinafter fully considered.

In addition to attacking all the denials in the answer and moving to strike them out as frivolous—which motion I deny as entirely without foundation—the plaintiff attacks the three separate defenses pleaded by the defendant.

II. The first of these defenses is in effect a plea of supervening illegality owing to the provisions of section 20a of the Amendment of February 28, 1920, to the Interstate Commerce Act (49 USCA § 20a).

The defendant alleges that this act was controlling on the defendant as an interstate railroad company formed in 1916, and by section 20a thereof interstate carriers were forbidden to issue any share of capital stock by way of conversion or otherwise unless, and until, permission had been given to do so by the Interstate Commerce Commission.

The defendant further pleaded that there had not been any application for conversion of the preferred stock of the defendant into common stock prior to February 7, 1927, but

that as soon as such application was made, the defendant diligently proceeded to apply to the Interstate Commerce Commission for permission to make the conversion; that authority so to do was granted by the Interstate Commerce Commission on February 24, 1927; and that thereafter the defendant was ready, able, and willing to make the conversion which the plaintiff claims to have requested.

This defense was before Judge Bondy in the case of Marony v. Wheeling & Lake Erie Railway Co. (D. C.) 33 F.(2d) 916, and he granted the plaintiff's motion to strike it out. Even if I did not agree with this ruling, I should feel bound to follow it, for this separate defense is identic with the defense passed on by Judge Bondy. But I agree entirely with his ruling, for a defense of a supervening illegality, which can be cured by proper steps taken in behalf of the party pleading it, is not a good basis for a claim of frustration, which in its essence is an equitable defense. Texas Company v. Hogarth Shipping Co., Ltd., 265 F. 375 (D. C.) per Judge Hough, affirmed (C. C. A.) 267 F. 1023; 256 U. S. 619, 41 S. Ct. 612, 65 L. Ed. 1123; Impossibility as a Defence, 12 Harvard Law Rev. 501. Cf. also notes in 15 Harvard Law Rev. 63, and 19 Harvard Law Rev. 462.

Here the railroad company was aware of the provisions of its charter and of the options given to its preferred stockholders, and should have prepared so soon as the Interstate Commerce Act Amendment of 1920 was passed, to be able to meet its obligations to its stockholders. Cf. Texas Co. v. Hogarth Shipping Corp., Ltd., 256 U. S. 619, 627, 41 S. Ct. 612, 65 L. Ed. 1123; Chicago, Mo. & St. Paul Ry. Co. v. Hoyt, 149 U. S. 1, 14, 13 S. Ct. 779, 37 L. Ed. 625; The Henry W. Cramp (C. C. A. 3) 20 F.(2d) 320, 322; Lima Locomotive & Mach. Co. v. National Casting Co. (C. C. A. 6), 155 F. 77, 80, 11 L. R. A. (N. S.) 713; Nester v. Diamond Match Co. (C. C. A. 7), 143 F. 72, 75; Motschman v. United States, 47 Ct. Cl. 373, and cases cited in 3 Williston on Contracts, § 1959, p. 3329.

Consequently the plaintiff's motion to strike out this defense would prevail if it were not for the considerations dealt with hereinafter.

III. The second affirmative defense is in effect that the plaintiff has not any locus standi to maintain this action unless he alleges that he was a stockholder of record at the time of his demand for conversion of the preferred stock which he claims to have owned.

This defense was pleaded in the case of Marony v. Wheeling & Lake Erie Railway Co., but was not challenged by the plaintiff in that case. Judge Bondy in that case had before him a motion to dismiss the complaint. This motion he denied, holding that the allegation of the complaint in that case that the plaintiff was the "holder and owner of 500 shares" of the preferred stock was in compliance with the provisions of the certificate of incorporation above quoted and sufficient.

Judge Bondy called attention to the fact that this defense had to be affirmatively pleaded and by his final order left the case to be tried on the allegations of the complaint, the denials of the answer, and an affirmative defense identic with the second defense here.

I sustain the sufficiency of the complaint in this respect, for it is alleged therein that the plaintiff was "the holder" of 100 shares of the preferred stock.

In doing this I follow Judge Bondy's decision as a matter of the orderly administration of justice in this court for the judges thereof, though eight persons are one court.

My own view, however, is that, although the complaint is sufficient, it would have been better pleading for the plaintiff to have alleged, if he could have done so, that he was a stockholder of record of the preferred stock. For unless the plaintiff occupied that status he could not have exercised the option of conversion which was accorded, as I hold, only to stockholders of record, and hence cannot maintain this action.

The option given in the certificate under consideration here is in effect an offer to each person who becomes a holder of record of the preferred stock, and, like any other offer, can be accepted or availed of only by the persons to whom it is made and must be accepted or availed of precisely in accordance with its terms. Waterman v. Banks, 144 U. S. 394, 12 S. Ct. 646, 36 L. Ed. 479; Lisman v. Milwaukee, L. S. & W. Ry. Co. (C. C.) 161 F. 472, affirmed (C. C. A. 8), 170 F. 1020; Holland v. Cheshire R. Co., 151 Mass. 231, 236, 24 N. E. 206; Williston on Contracts, § 620.

It is obvious that the only persons who are integrated with a corporation as stockholders are those persons who are stockholders of record on the stock books of the corporation. To hold otherwise would lead to corporate chaos.

■ The holder of a "street certificate," i. e. a certificate of stock indorsed in blank by a stockholder of record or the holder of a certificate indorsed to the holder by name, is not a stockholder, although he has been given an irrevocable assignment of his transferor's rights. Gideon v. Representative Securities (D. C.) 232 F. 184, 185; Shellington v. Howland, 53 N. Y. 371, 376. His rights as against the corporation are inchoate only until the transfer is consummated by the surrender of the indorsed certificate and the issue of a new certificate in his name. Until then he is not entitled to the privileges or emoluments of stockholders, nor does he come under the liabilities, if any, which may be inherent in such a status. Brown v. Duluth, M. & N. Ry. Co. (C. C.) 53 F. 889; In re Robert Clarke, Inc., 186 App. Div. 216, 219, 174 N. Y. S. 314; Matter of Hastings, 120 App. Div. 756, 757, 105 N. Y. S. 834; Pray v. Todd, 71 App. Div. 391, 393, 394, 75 N. Y. S. 947; Matter of Reiss, 30 Misc. Rep. 234, 236, 62 N. Y. S. 145; Matter of First National Bank, 28 Misc. Rep. 662, 664, 59 N. Y. S. 1042; aff'd 44 App. Div. 635, 60 N. Y. S. 1138; Henkle v. Salem Mfg. Co., 39 Ohio St. 547, 553; Cleveland City Ry. Co. v. First Nat. Bank, 68 Ohio St. 582, 599, 67 N. E. 1075.

A corporation is constituted of stockholders who are owners of aliquot parts of its assets. If they have agreed among themselves by its charter to change their intracorporate precedence, under certain conditions or at certain times, there is only involved a question of the internal economy of the corporation, and an outsider who has not joined the corporate circle has not any locus standi whatever in respect of such a matter. Cf. In the Matter of Hastings, 120 App. Div. 756, 757, 105 N. Y. S. 834.

Cases of attempted intervention by strangers in intracorporate affairs are not rare. They are almost always initiated by the holders of "street certificates" or their equivalent, and the rights claimed by such persons usually are and always should be denied.

Therefore the second separate defense is good.

■ If the facts be as therein alleged, the plaintiff's case would fail, for he could only succeed in maintaining his action if he could show that he was a stockholder of record of the preferred stock of the defendant corporation on February 8, 1927, when he made his alleged tender of a certificate of preferred stock for conversion.

IV. The settled principles just mentioned assist in dealing with the motion to strike out the third separate defense.

The third defense is that the plaintiff has not any locus standi to maintain this suit because, before commencing it, he transferred to another the certificate for any shares of the preferred stock in the defendant company which he may have had, and to which his complaint refers, and thus divested himself of any claim under the option contained in the preferred stock certificate of which he claims once to have been an owner.

At the end of his opinion in the Marony Case, referred to above, Judge Bondy stated that the point raised in this third defense, which was incidentally mentioned in that case, must be pleaded as an affirmative defense. He did not, however, pass on its validity.

In support of the soundness of its third defense the defendant relies on the case of Denney v. Cleveland & Pittsburg Railroad Co., 28 Ohio St. 108, and Brooks & Co. v. North Carolina Public Service Co. (D. C.) 32 F.(2d) 800, which recently referred with approval to the Denney Case.

I do not think those cases are really in point, because they both deal with convertible unregistered bonds. Cases involving such negotiable instruments are quite different from this case. A plaintiff in suing on a contract provision contained in a bond must show that he is the holder of the bond when he sues, and indeed may have to produce the bond at the trial and tender it for cancellation if he wishes to prevail on an alternative method of satisfying the debt represented by the bond. Cf. The Emily B. Souder, 17 Wall. 666, 670, 21 L. Ed. 683; Ramsey v. Allegre, 12 Wheat. 611, 613, 6 L. Ed. 746.

Assuming, therefore, that the cases cited by the defendant are rightly decided, because the subject-matter discussed was convertible bonds, they do not suggest analogies in this case.

Here stock is involved, that is, ownership; there, debts were involved. The risk that the corporation might have to pay a debt twice in those cases was a real one.

■ Here there is not any such risk. If the right of conversion is limited, as I have limited it, to stockholders of record, all difficulties and uncertainties in this case vanish. That is the safety factor in a case involving as here convertible stock. Surely, if the defendant refuses to convert the preferred stock, on proper demand and tender, the stockholder could then sell his preferred

stock, and claim as damages the difference between the sale price and what he would have been able to sell it for if the corporation had converted it into common stock in accordance with its agreement. His damages would thus be fixed by an actual transaction.

When the certificate is transferred on the books of the company after such a sale, a new certificate is issued and evidences the status of a new stockholder as such with a new option. Therefore, until the conversion is actually made the shares remain preferred shares and subject to new option contracts in the hands of each new stockholder, no matter how many times they may be transferred, or how often the corporation may have refused to convert them.

The situation involved here is not of a series of breaches of one contract, as the defendant claims, but the possibility of breaches of successive identic contracts. For the option here is inherent in the status of preferred stockholder of record—not in the certificate which evidences that status.

The third separate defense is therefore not sufficient in law.

To summarize the results on the plaintiff's motion, as heretofore indicated, he would prevail in respect of the first and third separate defenses only, i. e., those defenses would be stricken out; and his motion to strike out the second separate defense, and in all other respects, would be denied if it were not for another aspect of this very interesting proceeding with which I shall now deal and which, if I am right in my views on it, necessitates a dismissal of the complaint.

V. The basis of the alleged claim for damages is set forth in great detail in the paragraphs of the complaint numbered 11 to 16, inclusive.

After claiming a proper tender on February 8, 1927, the plaintiff sets forth that on that date the market price of the preferred stock of the defendant on the New York Stock Exchange was $88 per share, and that the common stock of the defendant sold on that day on the New York Stock Exchange for $130 per share; that the plaintiff had bought the preferred stock in order to convert it into common and then sell it; that if conversion had been made the plaintiff could and would have sold the resultant common shares at $130 per share; that by reason of the defendant's failure to make the conversion the plaintiff was deprived of the chance to get common stock for his preferred stock and sell it as he had planned; and that

consequently he was damaged to the extent of $4,200—the difference in price between 100 shares of the common stock and 100 shares of the preferred stock of the defendant on the day of the alleged tender.

The plaintiff does not allege that he sold the preferred stock or that he had sold and agreed to deliver to his vendee 100 shares of defendant's common stock and had demanded the conversion in order to fill this contract, as was alleged by the plaintiff in the Marony Case.

The right to recover damages must be founded on damages suffered as the result of an actual transaction. If a man breaks a contract with another, that other, unless it is impossible to do so, must take steps to fix his damages by going through with his transaction in some other fashion. If he does not do this, the damages he suffers is attributed to his own act and not to that of his delinquent obligor. This is the foundation of the well-known rule requiring a party claiming breach of a contract to minimize his damages by substituted performance. Cf. Warren v. Stoddart, 105 U. S. 224, 229, 26 L. Ed. 1117; The Oregon (C. C. A. 6), 55 F. 666, 674, 675.

The cases are rare where, as here, one meets a claim for damages founded on a mere gesture. I know of only two cases which involved such a situation. They are Grimwood v. Munson Steamship Line (C. C. A. 2) 273 F. 166, decided in 1921, and Irvine v. Midland Great Western Railway (Ireland) Company, 6 Law Reports Ireland (Common Law) 55, decided in 1880. Both these cases held that damages could only be shown by a real transaction. Here the plaintiff has entirely failed in his unusually elaborated allegation of damages to show any damage whatever due to the defendant's acts. His allegations rise no higher than the defeat of a hope for gain. His alleged tender was refused by the defendant, and so far as appears he let it go at that.

On the trial of this case on the present complaint, therefore, assuming the liability of the defendant to be otherwise established, the trial judge would have to do what Judge Mayer did at the trial of the case of Grimwood v. Munson Steamship Line—dismiss the complaint on the ground that all that the plaintiff had shown was injuria absque damno. See Grimwood v. Munson Steamship Line (C. C. A.) 273 F. at page 167.

VI. It is a settled, though oft-forgotten, rule that a plaintiff's demurrer to a defense tests his own pleading. Citations on

this trap for the unwary could be many, but a case or two including an illustration from the decisions of this court will suffice.

In the case of United States v. Central Nat. Bank (D. C.) 10 F. 612, the plaintiff, as here, demurred to each of several separate defenses as insufficient in law. Judge Addison Brown held that the whole record was opened up and ordered judgment for the defendant, unless the plaintiff should amend within twenty days. He said at page 615 of 10 F.:

"It is an ancient rule in pleading that upon demurrer the whole record is presented, and judgment goes against the party who commits the first substantial fault. Cooke v. Graham, 3 Cranch, 229 [2 L. Ed. 420]; Sprigg v. Bank of Mt. Pleasant, 10 Pet. 264 [9 L. Ed. 416]; I Saund. 119, note 7; 285, note 5; 1 Chit. Pl. 668. The same rule is still applicable under the Code. * * * People v. Booth, 32 N. Y. 397."

Although this case was reversed by Judge Wallace on the merits (C. C.) 24 F. 577, and ultimately went to the United States Supreme Court, 137 U. S. 355, 11 S. Ct. 126, 34 L. Ed. 703, Judge Brown's practice was never challenged or criticized.

The same practice rule is laid down in Chelsea Exchange Bank v. Travelers' Ins. Co., 173 App. Div. 829, 833, 834, 160 N. Y. S. 225.

A motion to strike out pleadings or parts thereof as insufficient in law is the modern equivalent of a demurrer. Carmody, Pleading and Practice in New York, § 246. When addressed to a defense in the answer of a defendant or to a replication by a plaintiff, it opens up the whole record as a demurrer did of old.

The rationale of this principle is that such an attack, whether by motion or demurrer, has to be based on, and necessarily presupposes, a sound pleading in behalf of the party making it. Otherwise, it would be futile to grant the relief, however great the infirmity of the pleading attacked might be. For the ultimate object of an interlocutory proceeding of this kind in an action is not to settle nice questions of pleading, but to force the proper statement of issues of fact for the trial of the controversy between the parties. Such a purpose would not be promoted if the party prevailing on a motion of this kind or on a demurrer should thereafter be unable to proceed with his case owing to the inherent weakness of his own pleading.

This is the unfortunate situation of the plaintiff here. In view of the elaboration of his ad damnum clause, it may be that he never will be able to cure the defect, apparently inherent in his case, by a complaint which he could safely and properly verify. But as noted in my decision at the beginning of this opinion, I give him another chance.