Merrick, P.J.
This is a Dist./Mun. Cts. R. A. D. A., Rule 8A appeal by the plaintiff of the dismissal of her action to recover payment for services she allegedly provided more than nineteen years ago to her now-deceased mother-in-law.
Plaintiff Lydia Tateosian (the “Daughter-in-law”) was the daughter-in-law of Mary Tateosian (“Mary”) and the wife of Mary’s son, Charles Tateosian (“Charles”). According to the complaint and her affidavit, the Daughter-in-law performed services for Mary from 1952 to 1980, and Mary made oral promises, both in 1952 and thereafter, that she would compensate the Daughter-in-law from the sale of her improved property at “what is now known as 160 Osgood Street, Andover” (“the property”). The Daughter-in-law terminated her services to Mary in 1980, apparently as a result of some family discord. The judge’s memorandum of decision indicates that Charles filed suit against his mother, Mary, in the mid-1980’s to recover for services he had provided. The Daughter-in-law has averred that Charles’ suit also involved the sale of farmland in Andover. It is not clear whether the house at 130 Osgood Street had been part of the farm property. In any event, the Daughter-in-law was not a party to her husband’s action against his mother, that suit was eventually settled well prior to Mary’s death, and Charles has since died.
In 1988, Mary executed a will granting a life estate in her home at 130 Osgood St. to another son, John, and the remainder to her granddaughter, Carrie Chakar-ian (“Carrie”), who was nominated as executrix. On January 26,1994, Mary died, still seized of the property. On March 19,1998, Carrie filed a petition in the Probate Court to probate Mary’s will, and was named as executrix. On April 27,1998, the Daughter-in-law commenced this action in contract and quantum meruit against Carrie, as executrix, claiming she had never been paid for her services to Mary.
Carrie was served on May 6,1998, and defaulted on June 4,1998. On July 28, 1998, the court (the “first judge”) allowed the Daughter-in-law’s Mass. R. Civ. R, Rule 55(b)(2) application to assess damages in the amount of $300,000.00. On August 4, 1998, Carrie’s counsel filed a Mass. R. Civ. R, Rule 60(b) (1) motion to vacate judgment, which was heard and allowed by a second judge on August 13, 1998. On September 3,1998, the first judge heard the Daughter-in-law’s motion for summary judgment and Carrie’s motion to dismiss on statute of limitations grounds. The judge denied the summary judgment motion and allowed the motion to dismiss in a comprehensive memorandum. The Daughter-in-law has appealed those rulings and the second judge’s allowance of the motion to vacate *145 the default judgment.[2]
1. The Rule 60(b)(1) motion by Carrie’s counsel, Mary Anne Sahagian, to vacate the default judgment states that: she (counsel) was unable to file the answer due to illness, she called plaintiffs counsel within three days of the default to request assent to file an answer late, plaintiffs counsel indicated that he could not assent without leave of his client, and plaintiffs counsel subsequently declined to assent. These assertions are not sworn. Plaintiffs counsel responded with an affidavit stating that Attorney Sahagian did not mention illness during their early communications.
The Daughter-in-law complains that Attorney Sahagian did not file an affidavit in support of the defendant’s Rule 60(b) (1) motion. It is true that a judge hearing a motion to vacate judgment is not required to consider evidence offered at a hearing which is not in affidavit form. Cicchese v. Tape Time Corp., supra at 75. However, he or she is certainly free to do so. Moreover, as the Daughter-in-law has not provided a transcript of the motion hearing, we do not know what representations, sworn or otherwise, were made to the judge as to the reasons for the default.
Further, an application of the familiar factors recited in Berube v. McKesson Wine & Spirits Co., 7 Mass. App. Ct. 426 (1979), for Rule 60(b) (1) relief amply supports the court’s decision to vacate the default judgment.[3] A statute of limitations defense is apparent on the very face of the Daughter-in-law’s complaint. Carrie’s motion was brought reasonably promptly, and there was no prejudice to the Daughter-in-law from the minor delay. The neglectful conduct occurred before trial and was chargeable to counsel rather than the defendant. More significantly, it is not our function here to decide the motion anew.
Decisive in the instant case is that, ultimately, resolution of motions for relief from judgment repose in the broad discretion of the motion judge. An appellate court will not reverse the motion judge’s decision ‘except upon a showing of a clear abuse of discretion.’ (citation omitted). The standard is one of marked deference.
Tai v. Boston, 45 Mass. App. Ct. 220, 224 (1998); 128 Sales, Inc. v. DeMaria, 1999 Mass. App. Div. 32, 33. We find no abuse of discretion in the approval by the sec *146 ond judge of the motion to vacate. Scannell v. Ed. Ferreirinha & Irmao, Lda., 401 Mass. 155, 158 (1987).
2. There was also no error in the allowance of Carrie’s motion to dismiss brought on the grounds that the Daughter-in-law’s action was barred by the statute of limitations.
Determination of the appropriate statute is initially difficult because of the Daughter-in-law’s inability (or unwillingness) to state the conditions under which Mary was to make payment and when. Her affidavit in support of her summary judgment motion stated, in its entirely:
“1.1 am the Plaintiff in the above-referenced action.
“2.1 did marry Charles Tateosian, the son of Mary Tateosian.
“3. Mary Tateosian asked me to work for Mary, on her property and for her son, John Tateosian, in exchange for compensation from the proceeds of the sale of her property located at 160 Osgood St. Andover, MA
“4.1 agreed to provide whatever assistance she desired. And, indeed, I did work for Mary Tateosian beginning on or about December 1952 to on or about December 1968, laboring between ten and sixteen hours a day.
“5. From on or about January 1, 1968 to on or about December 31, 1980, I reduced my assistance, to Mary Tateosian, to four days a week.
“6.1 have not received any compensation from Mary Tateosian or the Estate of Mary Tateosian for my services to Mary Tateosian.”
Even assuming the truth of these averments, the affidavit is silent as to whether the oral “contract” required payment only if and when Mary sold the property, whether Mary was required to sell the property, or whether she was to make a testamentary provision to pay for the services.
The [affidavit] fails to state with sufficient particularity that consideration or what the agreement, if any, was. We are left in doubt whether there was a bilateral contract, a unilateral contract, a preliminary agreement or some sort of transaction which was not reasonably to be regarded as a binding contract.
Beckford v. Beckford, 329 Mass. 389, 390 (1952).
We assume for the sake of this discussion that Mary’s alleged promise was not just that she would pay the Daughter-in-law if and only if Mary decided to sell the property, which would be no obligation at all. Generally, even in the absence of an enforceable express contract to pay for services, a promise to pay will be implied where the recipient accepts the services in circumstances such that he knew or should have known that the services were to be paid for and were not rendered gratuitously. Dixon v. Lamson, 242 Mass. 129, 137-138 (1922); McKenna v. Twombly, 206 Mass. 62, 64 (1910). If Mary was obligated to pay for the Daughter-in-law’s services or to sell her property to pay for those services, she was obligated to do so “within a reasonable time.” Cohen v. Wintman, 236 Mass. 471, 472 (1920); Barrie v. Quimby, 206 Mass. 259, 264 (1910); Holland v. Cheshire Ry. Co., 151 Mass. 231, 236 (1890); Silva v. Pereira, 1 Mass. App. Ct. 368, 372 (1973). ‘What is a reasonable time is a question of law to be determined in reference to the nature of the contract and the probable intention of the parties as indicated by it.” Barclay v. DeVeau, 384 Mass. 676, 684 (1981). See also Warren v. Ball, 341 Mass. 350, 353 (1960).
For services that commenced 42 years before Mary’s death and concluded 14 years before it, we hold that as a matter of law, the “reasonable time” in question expired no later than the time of Mary’s death. The Daughter-in-law’s cause of action for services would thus have accrued before Mary’s death. Even if the alleged oral contract obliged Mary to make some testamentary provision for any payment not made before her death, the Daughter-in-law’s cause of action in quan- *147 turn meruit (the Statute of Frauds, of course, barring enforcement of such an oral contract) would have accrued no later than the time of Mary’s death. Raine v. Shea, 259 Mass. 412, 415 (1927).
Section 9 of G.L.c. 197 provides that “an executor or administrator shall not be held to answer to an action by a creditor of the deceased unless such action is commenced within one year after the date of death of the deceased.” The Daughter-in-law’s action herein was not brought until four years after Mary’s death and is, therefore, barred by the statute. Her claim for services is as a “creditor of the deceased,” and is not a claim arising after death which would be enforceable only against the decedent’s personal representative. See Department of Public Welfare v. Anderson, 377 Mass. 23, 28-29 (1979). It is no basis for complaint by the Daughter-in-law that Carrie did not file the will for probate within a year. Since no one filed for administration of the estate within 30 days of Mary’s death, the Daughter-in-law, as a principal creditor, was free to do so herself. G.L.C. 193, §1.
Other statutes of limitations advanced by the Daughter-in-law in opposition to Carrie’s dismissal motion are not applicable. Section 13 of G.L.c. 197 applies only to claims against the decedent which do not accrue during the first year after the decedent’s death. Flannery v. Flannery, 429 Mass. 55, 57-58 (1999). Section 12 of G.L.c. 250 excludes, for limitations purposes, the time during which the person liable conceals a cause of action. Even assuming that §12 had some application, the record is obviously devoid of any suggestion that Mary managed to conceal a cause of action after her death.[4] In short, Carrie’s motion to dismiss was properly allowed.[5] Accordingly, the court’s judgment of dismissal is affirmed. Appeal dismissed.
So ordered.

 The Daughter-in-law has also appealed the first judge’s denial of a motion to recuse himself which was brought after the summary judgment hearing. No transcript of that hearing has been provided. Based upon the Daughter-in-law’s own assertions, however, it may be reasonably inferred that the judge, who had originally assessed damages, expressed satisfaction that the case was being heard on its merits. “Default judgments are judicially disfavored.” Salloway v. Wood, 1994 Mass. App. Div. 219, 223. See also Cicchese v. Tape Time Corp., 28 Mass. App. Ct. 72, 74 (1989). The judge, also quite properly, pressed questions about some weaknesses in the Daughter-in-law’s case, which we discuss infra. Nothing in the record constitutes even a threshold showing that the judge’s impartiality might reasonably be questioned. The motion and the appeal on that issue are utterly frivolous.

 These factors are “(1) whether the offending party has acted promptly after entry of judgment to assert his claim for relief therefrom; (2) whether there is a showing either by way of affidavit, or otherwise apparent on the record, that the claim sought to be revived has merit; (3) whether the neglectful conduct occurs before trial, as opposed to during, or after the trial; (4) whether the neglect was the product of a consciously chosen course of conduct on the part of counsel; (5) whether prejudice has resulted to the other party; and (6) whether the error is chargeable to the party’s legal representative, rather than to the party himself;...” Mat 430-431.

 Having brought this action in the District Court, the Daughter-in-law now makes the rather odd argument, which we do not consider, that only the Probate Court has jurisdiction to determine the appropriate statute of limitations. If the District Court has jurisdiction over this claim, it has jurisdiction to determine whether it was timely brought.

 Given the court’s proper dismissal of the action on the grounds that it was time barred, there was obviously no error in the denial of the Daughter-in-law’s motion for summary judgment.