## LAMBORN et al. v. CLEVELAND TRUST CO.

Circuit Court of Appeals, Sixth Circuit.
November 12, 1928.

No. 4798.

Clan Crawford, of Cleveland, Ohio, and Louis O. Van Doren, of New York City (Alfred C. B. McNevin, of New York City, Squire, Sanders & Dempsey, of Cleveland, Ohio, and Van Doren, Conklin & McNevin, of New York City, on the brief), for plaintiffs in error.

W. H. Boyd, of Cleveland, Ohio (Boyd, Cannon, Brooks & Wickham and Richard S. Douglas, all of Cleveland, Ohio, on the brief), for defendant in error.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. Writ of error to a judgment for defendant in an action on a letter of credit. The letter was issued May 21, 1920, to Lamborn & Co., plaintiff below, by the Lake Shore Banking & Trust Company, predecessor of the Cleveland Trust Company, of Cleveland, defendant below. It reads:

"We hereby authorize you to value on the Royal Bank of Canada, New York City, for account of The Ohio Confection Company, Cleveland, Ohio, up to an aggregate amount of Twenty-six thousand five hundred sixty-one and ninety-two cents available by your drafts at sight against Bills of Lading for 550 bags Java White Granulated Sugar, 224 pounds to the bag, price 22c. less 2% duty paid f. o. b. cars Baltimore, Maryland, Landed Weights, August and September delivery from Java.

"Bills of lading for such shipment must be made out to order of The Lake Shore Banking & Trust Company of Cleveland, and together with invoice, must accompany the drafts.

"The amount of each draft negotiated together with date of negotiations must be endorsed on back thereof.

"A duplicate of such invoice, together with one copy of bill of lading, must be sent by the bank or banker negotiating draft direct to The Lake Shore Banking & Trust Company of Cleveland, by mail, attaching to the draft a statement to this effect.

"Any draft drawn under this credit must

state that it is 'drawn under Letter of Credit L. S. B. & T. No. 102, dated Cleveland, May 21, 1920,' and must be advised to The Lake Shore Banking & Trust Company, Cleveland, Ohio.

"We hereby agree with bona fide holders that all drafts issued by virtue of this credit and in accordance with the above stipulated terms, shall meet with due honor upon presentation at the office of the Royal Bank of Canada, New York City, if drawn and negotiated on or before November 15, 1920."

Concurrently with the issuance of this letter defendant wrote to the Royal Bank of Canada, guaranteeing to put it in "funds to meet any and all drafts under this credit up to the limit named together with a commission of ⅒ of 1%, plus all exchange and collection charges." Subsequently, on July 2, 1920, the letter of credit was amended to provide for "August and September shipment from Java" instead of "August and September delivery from Java," and to extend the date of negotiation to December 10th.

On December 3d plaintiff drew upon the Royal Bank of Canada for the full amount of the credit, attaching to its draft invoices and shipping documents for sugar of an equivalent amount in value. The Royal Bank of Canada, not having been put in funds as had been promised by defendant, drew upon defendant through the Central National Bank of Cleveland for the amount of plaintiff's draft. Defendant refused to honor this draft, giving as its reasons therefor the existence of a restraining order issued by a state court of New York. When the draft was again presented, after the restraining order had been dissolved, defendant refused to pay, on the ground that the credit had expired.

In its answer in the District Court, the defendant set up two defenses: (1) That by reason of certain proceedings had in the state courts of New York the matters which plaintiff sought to have adjudicated were res judicata; and (2) that the documents supporting plaintiff's draft failed to comply with the letter of credit. This latter defense was confined in the proofs to the descriptive terms "Java White Sugar" used in the invoices and shipping documents and "Java White Granulated Sugar" called for by the letter of credit. The plaintiff denied in its pleadings that there was a material variance between these terms, and also claimed that defendant was estopped from asserting or relying upon such variance, if any, as a defense. The lower court decided the question of res judi-

cata in favor of plaintiff. That ruling was clearly right. The other questions were decided in favor of defendant. They are elaborately argued, but we find it is necessary to consider only the question of estoppel.

On May 17, 1920, the Ohio Confection Company contracted for the sugar in question, at the agreed price of 22½ cents a pound less 2 per cent. duty, f. o. b. cars Baltimore, Md. On August 31st defendant declared that the carrying steamer would be Taiho Maru, but on October 4th declared the Texas Maru, canceling the previous declaration. By October 1st the price of sugar in this country had fallen to 6 cents a pound. On October 7th defendant sent to the Royal Bank of Canada a copy of a letter written by the confection company to plaintiff insisting upon delivery from Taiho Maru and upon other conditions not mentioned in the letter of credit. On November 19th defendant notified plaintiff that the letter of credit was canceled, and on November 27th the confection company served upon plaintiff a similar notice. On November 30th the confection company filed suit in a state court of New York, and procured a temporary restraining order, restraining plaintiff from negotiating any drafts against the credit, but providing that nothing in the order should prevent plaintiff from presenting its drafts, invoices, or shipping documents to the bank issuing the letter. On December 3d, while this order was in force, plaintiff drew upon the Royal Bank of Canada for the full amount of the credit, whereupon that bank drew upon defendant for the same amount through the Central Bank of Cleveland, attaching to its draft, as plaintiff claims, plaintiff's draft and the papers presented with it. This draft was presented to defendant on December 6th or 7th by messenger, and was rejected. It was also rejected by telephone, on the same day, because, as stated by defendant, of the restraining order issued by the New York court. Thereupon the Central National Bank on December 7th advised the Bank of Canada that payment of the draft had been refused, and on the same day, the Bank of Canada called upon defendant to protect its letter and to pay the draft, advising defendant that all papers were in proper shape. Defendant continued to refuse payment upon the ground of the court injunction. On December 17th the restraining order was vacated, and on the same day the Central Bank again presented the draft for payment. Defendant then refused to pay upon the ground that there would be an appeal from the order of

vacation. On December 21st it advised the Bank of Canada that its reasons for not paying were that the papers did not show the weight of the bags or that the sugar was granulated. The papers were corrected to meet these objections, as they properly could have been, after which payment was refused on the ground that the credit had expired.

It appears from the record that plaintiff's draft, with the original papers, was presented to defendant's bank with the draft of the Central Bank not later than December 7th; also that the error in the papers, now relied upon, if plaintiff's attention had been called to it at that time or even as late as December 9th, could and would have been corrected before the letter of credit expired. It is true that Kollie, an officer of defendant, testified that he first saw the papers after the letter had expired about December 20th; but neither he nor any other witness said that they were not presented to the bank by messenger as early as December 7th. It is also true that the correspondence between the Central Bank and the Bank of Canada referred only to the draft. We attach no significance to this latter fact, however, as, for aught that is shown in the record, that was the customary designation of such papers when attached to a draft. Besides, Mr. Horton, of the Central National Bank, testified that the draft was accompanied "by quite a number of documents," among them, as he remembered, a bill of lading or invoice; that he sent the "item" (the draft and, according to custom, the accompanying papers) to defendant's bank by messenger, and received a message to call up defendant; that he did call up defendant's bank, and was told that the draft would not be paid because of the restraining order. This evidence was uncontradicted, and clearly shows, we think, that the invoices and shipping documents were presented to defendant not later than December 7th.

 It is a settled rule that one who has given a reason for his conduct touching a matter in controversy will not be permitted, after the situation of the parties has changed, to change his position to the hurt of the other party. Second National Bank of Allegheny v. Lash Corporation (C. C. A.) 299 F. 371; and Ohio & M. Railway Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693. Admittedly, the Royal Bank of Canada was not the agent of defendant for the purpose of determining whether the invoices and shipping documents complied with the letter of credit. Nevertheless, defendant was bound to pay at the Royal Bank of Canada upon the presentation of documents showing compliance with the terms of the letter, whether that bank did or did not examine the documents or furnish duplicates to defendant. In order that it might ascertain whether the documents were proper, defendant required the bank, when negotiating any draft under the letter, to attach to the draft a duplicate of the invoice with a copy of the bill of lading. This method which it had provided for determining whether it would pay was also a means through which it might, if it desired, waive any defect in the papers. It could do this, it is true, only by some act intended to have that effect; but intentional relinquishment may be implied. It is to be implied, we think, from the circumstances here. Both the confection company and defendant wished to escape from their obligations. They were acting together. The confection company procured a restraining order. This provided defendant with a convenient means for doing what it wanted to do—escape payment; and, when the draft was presented, it elected to ignore the invoices and shipping documents, to assume that they were correct and to lead plaintiff to believe that it so regarded them, and to base its refusal upon the ground of the pending injunction.

If defendant had refused to pay without stating any reason for its action, it could undoubtedly rely in defense of this suit upon any good reason which in fact existed. Its silence, in those circumstances, would not have misled plaintiff, whose natural action would have been to look to the papers and correct them if they were not in order. But defendant did not do this; it refused to pay upon the specific ground of the pending injunction, and thus led plaintiff away from this natural precaution. Plaintiff was under no duty to furnish copies of the papers to defendant; it had the right to assume that defendant had not only seen them, as indeed it had or could have seen them, but that it also had accepted them as correct, and was stating the only ground for its action upon which it expected to rely, i. e., the injunctional order. The defendant could not thus mislead the plaintiff and, when it is too late to correct an error that could and would have been corrected, take a position that it could not take except for its misleading act. Grimwood et al. v. Munson S. S. Co. (C. C. A.) 273 F. 166; International Banking Corporation v. Irving National Bank (D. C.) 274 F. 122. The result is it is estopped from relying upon any defects in the papers, and, as it presented no other valid defense, there

should have been a directed verdict for the plaintiff.

Reversed and remanded.