550 F.2d 882
 21 UCC Rep.Serv. 247
 The CHASE MANHATTAN BANK, National Association, as Trustee,
Plaintiff-Appellant,
v.
EQUIBANK, a National Banking Association, Defendant-Appellee,
Air-North Associates, a limited partnership, and Pitt-Bethel
Associates, Inc., a corporation, Defendants.
 No. 76-1638.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 4, 1977.
Decided Feb. 16, 1977.
 
 Stephen A. George, Buchanan, Ingersol, Rodewald, Kyle & Buerger, Pittsburgh, Pa., Adlai S. Hardin, Jr., Milbank, Tweed, Hadley & McCloy, New York City, for plaintiff-appellant.
 Jerome M. Libenson, Joan P. Feldman, Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Pittsburgh, Pa., for defendant-appellee.
 Before ALDISERT and WEIS, Circuit Judges and HUYETT,* District Judge.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 Whether equity bans Equibank from rejecting the Chase paper must be decided in this dispute over a letter of credit. The beneficiary contended that its tardy presentation of documents was the result of an agreement by the issuing bank to extend the time beyond that specified in the letter. The district court held that a waiver would be ineffective without the consent of the bank's customer who had caused the letter to issue. We hold that waiver can be enforced as against the issuing bank, and vacate a summary judgment in its favor.
 
 
 2
 In 1971, the Chase National Bank agreed to provide Air-North Associates long-term financing for motel construction near Pittsburgh, Pennsylvania. As a prerequisite for the commitment, Chase required a letter of credit in its favor, payable in the event that Air-North did not complete the loan transaction in accordance with the agreement. Equibank, a banking institution located in Pittsburgh, issued the requested irrevocable letter of credit which provided for payment upon presentation of a sight draft accompanied by "(c) ertification from you (Chase) that Air-North Associates has defaulted and which default has not been cured . . . ."
 
 
 3
 Equibank also agreed to provide interim construction financing for Air-North, with payment at the time of the Chase loan closing. Construction delays forced postponement of the closing several times, and the letter of credit's expiration date was extended to April 30, 1973.
 
 
 4
 On Friday, April 27, 1973, Air-North's representatives failed to appear for the scheduled closing in New York, and Chase immediately sent a telex message to Equibank requesting payment of the $108,000.[1] After an alleged telephone conversation with an Equibank official on Monday, April 30, 1973, Chase sent a letter confirming Air-North's default and a formal draft via normal collection channels. Equibank received the papers on May 10, 1973, but dishonored the draft because of "late presentation of draft and documents," noting the letter's April 30, 1973 expiration date.
 
 
 5
 Chase filed suit in district court against Equibank for dishonoring the draft, and joined Air-North because of its default. Air-North is no longer financially responsible. After several hearings and the filing of opinions on various issues, the district judge entered summary judgment in favor of the defendant Equibank. He held that Chase's presentation was untimely, and consequently Equibank properly dishonored the draft.
 
 I.
 
 6
 Both Chase and Equibank knew that construction difficulties had delayed the closing, and realized Air-North could have been declared in default some weeks before April 27, 1973. However, both banks made plans for the closing and in preparation their lawyers exchanged letters. Chase maintains that its letters of April 10 and April 26 had special significance. Those communications referred to items of construction not performed according to the original commitment but the letters did not use the word "default," did not mention the letter of credit, and did not demand payment thereunder.
 
 
 7
 In its opinion granting summary judgment to Equibank, the district court held that these letters did not constitute certification of default as specified in the letter of credit. The court characterized the correspondence as "present indications of possible default." We agree with this description and with the learned judge's insistence upon strict compliance with the conditions stated in the letter of credit. That requirement is all the more appropriate here where Chase, the beneficiary, must be presumed knowledgeable about banking practices.
 
 
 8
 The Uniform Commercial Code as adopted in Pennsylvania, Pa.Stat.Ann. tit. 12A, § 5-103(1)(a) (Purdon 1970), defines a letter of credit as:
 
 
 9
 ". . . an engagement by a bank or other person made at the request of a customer and of a kind within the scope of this Article . . . that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit."
 
 In more general language:
 
 10
 "A letter of credit is an engagement by a bank or finance company or other issuer which is made at the request of its customer or some other person who owes a debt which will arise in the future to a third person, which is made to that third person. The engagement is that if certain things are done, either by way of presentation of pieces of paper or simply by the making of a demand for payment of a draft or acceptance, payment or acceptance will take place."[2]
 
 
 11
 Letters of credit were originally designed to facilitate the movement of goods, but are now used in a variety of settings.[3] The undertaking in the letter is the purchase of documents a transaction entirely separate from the underlying contract between the customer and his business associate. Venizelos, S. A. v. Chase Manhattan Bank, 425 F.2d 461, 465 (2d Cir. 1970); Intraworld Industries, Inc. v. Girard Trust Bank, 461 Pa. 343, 336 A.2d 316 (1975). The issuing bank deals only in documents and need only determine whether they appear on their face to be in accordance with the terms and conditions of the credit. Uniform Commercial Code § 5-114; See International Chamber of Commerce, Uniform Customs and Practice for Documentary Credits, Brochure 222, Art. 7-8 (rev. ed. 1962).
 
 
 12
 The scope of the issuing bank's duty to inspect the documents was at issue in Courtaulds North America, Inc. v. North Carolina National Bank, 528 F.2d 802 (4th Cir. 1975). In that case, the issuing bank refused payment under a letter of credit because the invoice accompanying the beneficiary's draft did not contain the exact information required by the letter. The court granted summary judgment in favor of the bank, citing with approval a quotation contained in H. Harfield, Bank Credits and Acceptances 73 (5th ed. 1974): "There is no room for documents which are almost the same, or which will do just as well." 528 F.2d at 806. That standard, which insulates the issuing bank from the underlying transaction, is appropriate in the circumstances here.
 
 
 13
 This case is somewhat unusual in that Equibank, which issued the letter of credit, also financed the construction of the Air-North project. Equibank therefore was equally as knowledgeable if not more so as Chase about the construction problems and Air-North's failure to timely meet its commitments. Nevertheless, this does not excuse strict compliance with the terms of the letter of credit.[4]
 
 
 14
 Though Chase could have declared a default earlier, all parties proceeded under the assumption that the transaction would be closed, albeit with some delay. Chase did not formally certify a default until after April 27, 1973. Obviously, Chase did not consider the lawyers' letters as notice of default when they were sent but seized upon this argument only after its subsequent presentation had been rejected as untimely. The utility and advantages of the letter of credit device would be considerably lessened were we to accept less than strict compliance with its terms under these circumstances. We concur therefore with the district court's conclusion that as of April 27, 1973 there had been no proper presentation of documents.
 
 II.
 
 15
 Later, Chase did supply documents which met the conditions of the letter of credit, but they were not received until ten days after the letter of credit's expiration. The issue is whether, in rejecting that otherwise proper demand for payment, Equibank was justified in asserting untimeliness.
 
 
 16
 Lloyd Lambert, an administrative assistant in the mortgage loan department of the Chase Bank in New York, prepared an affidavit stating that on April 30, 1973, at about 1:00 P.M., he received a telephone call from one Harry Nieman, an employee of Equibank. Mr. Nieman allegedly requested a formal sight draft and a letter evidencing a default but agreed that these documents could be forwarded through domestic collections. According to the affidavit, it was common knowledge in the banking business that such delivery would entail a delay of several days. In a deposition Mr. Nieman stated that while he could not deny that a conversation might have occurred on April 30, he did not recall it. In any event, in an affidavit he maintained he "never waived the requirements necessary to draw on the letter of credit . . ." and, moreover, had no authority to do so.
 
 
 17
 From this evidence, Chase argues that Equibank granted an extension of time for presentation of the required documents. In its opinion of March 23, 1976, the district court held that the Lambert-Nieman conversation was irrelevant because Equibank could not change the letter of credit's terms without Air-North's consent. The court relied on Barclays Bank D. C. O. v. Mercantile National Bank, 481 F.2d 1224 (5th Cir. 1973), cert. dismissed, 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974), and the Uniform Commercial Code, Pa.Stat.Ann. tit. 12A, § 5-106(2) (Purdon 1970), for the principle that an issuing bank may not modify an irrevocable letter of credit without the customer's consent. In the application of that principle to the circumstances of this case, we believe that the district court erred.
 
 
 18
 In Barclays Bank, supra, the court correctly held that an issuing bank's attempt to modify the terms of a letter of credit to the disadvantage of the beneficiary was invalid without his consent. However, by way of dictum, the court also said a modification without the consent of the customer was invalid. Since the customer's rights were not at issue, that statement was irrelevant and is not authoritative in the factual setting of this case where the adversaries are the beneficiary and the issuing bank.
 
 
 19
 To avoid blurring the distinctions between the issuer-customer and issuer-beneficiary relationships, it is important to understand the obligations created by a letter of credit. The issuer must pay the beneficiary if he meets the letter of credit's terms. Both parties are held to a standard of strict compliance in the absence of conformity, the beneficiary cannot force payment and the bank pays at its peril. H. Harfield, supra at 102. If the issuing bank, by choice or inadvertence, waives a restriction in the letter of credit and pays the beneficiary despite the noncompliance, the issuer jeopardizes its right to reimbursement from the customer.[5] The possibility that the issuer may not be able to recover from the customer, however, does not bar the beneficiary in his suit against the bank. The beneficiary bases his claim on the letter of credit as modified by the bank and acceptable to him not on the agreement between the customer and the issuing bank, nor upon the underlying arrangement between customer and beneficiary. See Asociacion de Azucareros de Guatemala v. United States National Bank, 423 F.2d 638 (9th Cir. 1970); Dulien Steel Products, Inc. v. Bankers Trust Co., 298 F.2d 836 (2d Cir. 1962); Uniform Commercial Code § 5-114(1); H. Harfield, supra at 31. For example, if for its own reasons Equibank had prepared a writing in proper form extending the time for an additional month without the consent of Air-North, Chase could have enforced the letter of credit during that period. The fact that Air-North could have refused to pay Equibank for money disbursed during the unauthorized extension would not have insulated the bank from recovery by Chase.
 
 
 20
 In Barclays Bank D. C. O. v. Mercantile National Bank, supra, the issuer[6] by its own conduct was held to have waived proper presentation of documents despite the clear language of the letter of credit and the absence of consent by the customer. In affirming a judgment in favor of the beneficiary, the Court of Appeals said:
 
 
 21
 "There are no provisions in Article 5 (of the Uniform Commercial Code) which would indicate a belief on the part of the drafters that this doctrine of waiver should be inapplicable under the U.C.C." 481 F.2d at 1237.
 
 
 22
 We agree with that statement and apply it to the case at hand. See also Lamborn v. Cleveland Trust Co., 29 F.2d 46 (6th Cir. 1928). Thus, should the district court determine that Equibank authorized a delayed presentation of documents, the absence of assent by Air-North would not per se prevent recovery by Chase. Since the court's determination hinged on the lack of consent by Air-North, the judgment in favor of Equibank must be vacated.
 
 
 23
 Chase urges us to enter judgment in its favor arguing that since the affidavit of Lambert is uncontradicted, there is no material fact in dispute. We do not accept this contention, but rather agree with the district judge's perceptive opinion of May 2, 1975 in which he characterized the matter as disputed and noted that Nieman denied any waiver of the letter's terms. Moreover, in circumstances such as these, the trier of fact should have the opportunity to make judgments of credibility based upon all of the surrounding circumstances. Painton & Co. v. Bourns, Inc., 442 F.2d 216, 233 (2d Cir. 1971); 6 Moore's Federal Practice § 56.15(4) (1976). The questions of actual or apparent authority on the part of Nieman and whether Chase was justified in relying upon the alleged statement are not resolved on this record. See William B. Tanner Co. v. WIOO, Inc., 528 F.2d 262 (3d Cir. 1975). Further, it must be determined whether Chase can claim reliance upon a conversation which occurred only three hours before the close of banking hours. For example, whether it would have been physically possible to obtain, transport to Pittsburgh, and present the documents in that time span may be material.[7]
 
 
 24
 Obviously, we intimate no view on whether the controverted conversation took place or, if it did, what the legal effects might be. We decide only that the possibility of an estoppel or waiver on the part of Equibank has been raised and it was error to enter summary judgment with that issue unresolved.
 
 
 25
 Accordingly, the judgment of the district court will be vacated and the matter will be remanded for further proceedings in accordance with this opinion.
 
 
 
 *
 Honorable Daniel H. Huyett, 3rd, of the United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The district court concluded that this telex met the letter's requirement of a sight draft. Equibank did not file a cross-appeal from this determination and consequently it is not before us. The opinion of the district court on this point is reported in Chase Manhattan Bank v. Equibank, 394 F.Supp. 352 (W.D.Pa.1975). In view of our disposition of the case, it is not necessary for us to determine whether Chase complied with the provision that the draft be "accompanied" by supporting documents
 
 
 [2]
 Mentschicoff, How to Handle Letters of Credit, 19 Bus.Law. 107, 107-08 (1963)
 
 
 [3]
 See Comment, Commercial Letters of Credit: Development and Expanded Use in Modern Commercial Transactions, 4 Cum.-Sam.L.Rev. 134 (1973)
 
 
 [4]
 See Harfield, Code, Customs and Conscience in Letter-of-Credit Law, 4 U.C.C.L.J. 7, 11 (1972), where the author expresses his "fear that the sacred cow of equity may trample the tender vines of letter-of-credit law."
 
 
 [5]
 Similarly, the U.C.C. provision cited by the district court is inapplicable because under these facts it would be enforceable against Equibank only by Air-North
 
 
 [6]
 The defendant in that case was actually a confirming bank rather than the issuer. However, insofar as the principle under discussion is concerned, the issuer and the confirming bank are on the same footing. See the discussion at 481 F.2d at 1236, U.C.C. § 5-107(2). Student commentary on the case and on letters of credit generally may be found at 42 Fordham L.Rev. 706 (1974); 52 Texas L.Rev. 578 (1974); 19 Vill.L.Rev. 686 (1974)
 
 
 [7]
 International Chamber of Commerce, Uniform Customs and Practice for Documentary Credits, Brochure 222, Art. 42 (rev. ed. 1962), states: "Banks are under no obligation to accept presentation of documents outside their banking hours." The letter of credit recited that it was subject to the Uniform Customs
 Chase has argued that it could have sent the documents to Pittsburgh by air messenger on Monday Afternoon. It is curious that this procedure was not utilized on the preceding Friday.