WOLF, Judge.
The Stocktons appeal a final summary judgment of. foreclosure. The issue on direct appeal is if there are disputed issues of material fact concerning whether the underlying *395 letter of credit was a standby or commercial letter of credit. We determine that the letter of credit and application were ambiguous, thereby creating disputed issues of material fact concerning the parties’ intent, thereby precluding summary judgment. We find no merit in the cross appeal of First Union Nation Bank (First Union), and affirm as to that issue without further comment.
In October 1987, the Stocktons received approval of their application and agreement for a standby letter of credit to be issued by Southeast Bank in favor of Lloyds of London to enable Stockton to become an investor in one of the Lloyds underwriting groups. On October 27,1987, the Stocktons executed and delivered to Southeast a promissory note secured by a mortgage and credit agreement. The note and mortgage were executed and delivered to Southeast in anticipation of the issuance of the original letter of credit in order to fund and secure them. The letter of credit was issued by Southeast in favor of Lloyds of London in accordance with Stockton’s application. The original application for the letter of credit was titled, “Application and Agreement for Stand-By Letter of Credit.” The body of the agreement noted the original letter of credit must be presented when making draws. It also had-a paragraph which stated, :
Telegraphic transfer payments are authorized, therefore, 4 working days after receipt by us of an authenticated telex from yourselves duly indicating that documents have been negotiated, giving us the sterling pounds value and certifying that all terms and conditions of the credit have been complied with and also indicating the exact date on which the relative documents were mailed to us, we will authorize you to debit our sterling pound account with yourselves value 4 working days after receipt of your telex.
The letter of credit itself was entitled “Irrevocable Standby Letter of Credit.” It further contained the following language:
In accordance with instructions received from our above mentioned customer and for the account of same we hereby open this standby credit available for negotiation against presentation of documents de- ■ tailed herein and of your drafts at sight drawn on yourselves.
The closing sentence of the letter states, “We hereby engage with drawers or bonafide holders that documents drawn and negotiated in conformity with the terms of this credit will be duly honored.”
On September 19, 1991, the Federal Deposit Insurance Corporation (FDIC) placed Southeast into receivership. The FDIC was then appointed as the receiver. FDIC and First Union entered into a contract, the assistance agreement, whereby First Union purchased from the receiver certain assets and liabilities of Southeast for a lump-sum price. On October 23, 1991, First Union reaffirmed the letter of credit, and notified Lloyds of the reaffirmation on October 28, 1991. In the meantime, Stockton wrote to First Union stating that he believed he had been defrauded by Lloyds and that First Union should not honor the letter of credit if drawn upon. The parties had stipulated, however, that at the time First Union reaffirmed the letter of credit, First Union was without notice of any alleged fraud. In November 1991, Stockton attempted to dissuade or prevent First Union from honoring any demand for payment made pursuant to the letter of credit by recording a notice limiting future advances in the public records of Du-val County.
In March 1993, Lloyds presented a draft to the confirming bank, Barkley’s; Barkley’s paid the draft and certified its conformity to First Union pursuant to the letter of credit. Thereupon, Barkley’s debited First Union’s account in the amount of the draft, effectuating First Union’s payment. Once this .payment was made, the note and mortgage became funded. Accordingly, after notifying Stockton of its honor of the draft pursuant to the letter of credit, First Union requested that Stockton begin paying on the note and mortgage. The Stocktons refused to make payment and continue to do so.
First Union filed a complaint in August 1993 to enforce the promissory note and foreclose the mortgage and credit agreement which had been executed and delivered in October 1987 by the Stocktons. The com *396 plaint was answered, discovery conducted, and both parties filed motions for summary judgment supported by affidavits. Following arguments by the parties on their motions for summary judgment, the trial court entered summary judgment in favor of First Union in November 1995. Stockton argues on appeal that the letter of credit was a standby letter of credit (which was not properly purchased by First Union) rather than a commercial letter of credit as found by the trial court.
12 C.F.R. section 337.2(a)337.2(a) reads as follows:
§ 337.2 Standby letters of credit.
(a) Definition. As used in s 337.2, the term “standby letter of credit” means any letter of credit, or similar arrangement however named or described, which represents an obligation to the beneficiary on the part of the issuer: (1) To repay money borrowed by or advanced to or for the account of the account party, or (2) to make payment on account of any indebtedness undertaken by the account party, or (3) to make payment on account of any default (including any statement of default) by the account party in the performance obligation.1 The term “similar arrangement” includes the creation of an acceptance or similar undertaking.
(Parenthetical and footnote in original).
The footnote to this section explains as follows:
As defined in this paragraph (a), the term “standby letter of credit” would not include commercial letters of credit and similar instruments where the issuing bank expects the beneficiary to draw upon the issuer, which do not “guaranty” payment of a money obligation of the account party and which do not provide that payment is occasioned by default on the part of the account party.
The basic difference between a commercial and standby letter of credit is whether or not the letter of credit guarantees the beneficiary payment upon default by the account party. This difference is summarized in First Empire Bank-New York v. FDIC, 572 F.2d 1361, 1366-67 (9th Cir.), cert denied, 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978):
The principal difference between the traditional letter of credit and ... standby letters is that whereas in the classical setting, the letter of credit contemplates payment upon performance, the standby letter contemplates payment upon failure to perform.
One of the characteristics of commercial letters of credit (also called “traditional”) is that the issuing bank will honor drafts or any demand for payment upon compliance with the conditions specified in the letter of credit. Commercial letters of credit are frequently used by buyers and sellers of merchandise as a payment medium for goods sold in international trade; commercial letters of credit are not a guaranty in case of default. See, e.g., Squillante and Fonseca, The Law of Modern Commercial Practices § 7:3 (1981); White and Summers, Uniform Commercial Code (Practitioner Treatise) § 26-1 (4th Ed.1995); 10 C.J.S. Bills and Notes; Letters of Credit §§ 344-346 (1995).
A standby letter of credit (also called a “guaranty” letter of credit), is consistently defined as “one under which the issuer must honor demands for payment only if there is a default on the underlying contract between the issuer’s customer and the beneficiary, or if the beneficiary presents documentation indicating that the customer has defaulted.” 10 C.J.S. Bills and Notes; Letters of Credit § 346. One of the primary characteristics of a standby letter of credit is that, by its terms, it “stands by” for payment to the beneficiary in the event of default by the account party.
Appellee correctly asserts that in construing a letter of credit one must look at the letter itself rather than the underlying agreement between the customer and the beneficiary. Chase Manhattan Bank v. Equibank, 550 F.2d 882 (3rd Cir.1977). While we acknowledge there is no specific requirement on the face of the letter that Lloyds certify default on Stocktons’ part in order to receive payment from the issuer, we determine that questions of fact remain concerning the status of the letter of credit *397 because of items contained on the face of the letter and the application. Not only does the title designate the letter as a standby letter, but there is also a reference in the letter which appears to require that other documents will be presented upon a request for a draw. The letter states that these documents will be negotiated. Under these circumstances, we determine that questions of fact remain which preclude the entry of a summary judgment. We, therefore, reverse and remand for further proceedings.
JOANOS and VAN NORTWICK, JJ„ concur.